ACCEPTED
03-17-00696-CV
21622582
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/4/2018 9:53 PM
JEFFREY D. KYLE
CLERK

**No. 03-17-00696-CV**

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/4/2018 9:53:15 PM
JEFFREY D. KYLE
Clerk

CITY OF NEW BRAUNFELS, TEXAS, and Y.C. PARTNERS, LTD.
d/b/a YANTIS COMPANY,

Appellants,

vs.

CAROWEST LAND, LTD.,

Appellee.

On Appeal from the 22nd Judicial District of Comal County, Texas
Cause No. C2017-0474A, Hon. Margaret G. Mirabal, Sitting by Appointment

**BRIEF OF APPELLEE
CAROWEST LAND, LTD.**

Jason Davis
State Bar No. 00793592
Caroline Newman Small
State Bar No. 24056037
DAVIS & SANTOS, P.C.
719 S. Flores St.
San Antonio, Texas 78204
(210) 853-5882
(210) 200-8395 (Facsimile)
jdavis@dslawpc.com
csmall@dslawpc.com

Thomas R. Phillips
State Bar No. 00000022
Maddy R. Dwertman
State Bar No. 24092371
BAKER BOTTS L.L.P.
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
(512) 322-2500
(512) 322-2501 (Facsimile)
tom.phillips@bakerbotts.com
maddy.dwertman@bakerbotts.com

**ATTORNEYS FOR APPELLEE**

## IDENTITIES OF PARTIES & COUNSEL

In addition to counsel listed in Appellants' Identity of Parties and

Counsel, appellate counsel for Appellee Carowest Land, Ltd. include:

Thomas R. Phillips
State Bar No. 00000022
Maddy R. Dwertman
State Bar No. 24092371
BAKER BOTTS L.L.P.
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
(512) 322-2500
(512) 322-2501 (Facsimile)
tom.phillips@bakerbotts.com
maddy.dwertman@bakerbotts.com

# TABLE OF CONTENTS

Identities of Parties & Counsel ................................................................. i

Index of Authorities ................................................................................. iv

Statement of the Case............................................................................ viii

Statement Regarding Oral Argument ....................................................... ix

Issues Presented ........................................................................................x

Statement of Facts ....................................................................................1

Summary of the Argument.......................................................................12

Argument.................................................................................................16

    I.      The trial court properly denied the City's plea to the jurisdiction as to Carowest's South Tributary Claims.............................................16

          A.    Carowest's South Tributary Claims against the City are not barred by governmental immunity......................................16

               1.    Jurisdiction over Carowest's South Tributary Claims exists because the City asserted an affirmative counterclaim alleging breaches of the Letter Agreement. ........................................................17

               2.    Jurisdiction over Carowest's South Tributary Claims exists pursuant to Texas Local Government Code Section 271.152....................................................24

          B.    Carowest's South Tributary Claims against the City implicate a justiciable controversy...........................................37

                1.    Carowest's declaratory judgment claims are not moot. ...............................................................................37

                2.    Carowest's claim for attorneys' fees is not moot. ..........39

    II.    The trial court properly denied Yantis's plea to the jurisdiction as to Carowest's South Tributary Claims.............................................42

          A.    Jurisdiction over Carowest's South Tributary Claims against Yantis is not dependent on jurisdiction over Carowest's same claims against the City................................42

          B.    Carowest's South Tributary Claims implicate a justiciable controversy. ...............................................................44

Conclusion and Prayer ..........................................................................................47

Certificate of Compliance .....................................................................................49

Certificate of Service ............................................................................................50

iii

# INDEX OF AUTHORITIES

**Page(s)**

CASES

*Allstate Ins. Co. v. Hallman,*
159 S.W.3d 640 (Tex. 2005) ........................................................................39, 40

*Archer Grp., LLC v. City of Anahuac,*
472 S.W.3d 370 (Tex. App.—Houston [1st Dist.] 2015, no pet.)......................21

*Bandera County v. Hollingsworth,*
419 S.W.3d 639 (Tex. App.—San Antonio 2013, no pet.) ...............................23

*Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political*
*Subdivisions Prop./Cas. Joint Self-Ins. Fund,*
212 S.W.3d 320 (Tex. 2006) ........................................................................26, 27

*Bexar Metro. Water Dist. v. City of Bulverde,*
156 S.W.3d 79 (Tex. App.—Austin 2004, pet. denied) ...................................45

*Bexar Metro. Water Dist. v. City of Bulverde,*
234 S.W.3d 126 (Tex. App.—Austin 2007, no pet.)....................................37, 39

*Brooks v. Northglen Ass'n,*
141 S.W.3d 158 (Tex. 2004) .............................................................................44

*Camarena v. Tex. Emp't Comm'n,*
754 S.W.2d 149 (Tex. 1988) ..................................................................39, 40, 41

*Chenault v. Phillips,*
914 S.W.2d 140 (Tex. 1996) .............................................................................31

*City of Conroe v. TPProperty LLC,*
480 S.W.3d 545 (Tex. App.—Beaumont 2015, no pet.)...................................21

*City of Dallas v. Albert,*
354 S.W.3d 368 (Tex. 2011) ..................................................................17, 18, 23

*City of Houston v. Atser, L.P.,*
403 S.W.3d 354 (Tex. App.—Houston [1st Dist.] 2013, pet.
denied)...............................................................................................................11

*City of Houston v. Estate of Jones*,
   388 S.W.3d 663 (Tex. 2012) .........................................................................11, 45

*City of Houston v. United Water Servs.*,
   201 S.W.3d 690 (Tex. 2006) ......................................................................17

*City of McKinney v. Hank's Restaurant Group*,
   412 S.W.3d 102 (Tex. App.—Dallas 2013, no pet.) ..........................................21

*City of Midland v. Goerlitz*,
   201 S.W.3d 689 (Tex. 2006) .......................................................................17

*City of New Braunfels v. Carowest Land, Ltd.*,
   --- S.W.3d ---, No. 03-16-00249-cv, 2017 WL 2857142 (Tex.
   App.—Austin, June 29, 2017 mtn. for reh'g pending)................................passim

*City of New Braunfels v. Carowest Land, Ltd.*,
   432 S.W.3d 501 (Tex. App.—Austin 2014, no pet.)..................................passim

*City of Pearsall v. Tobias*,
   No. 04-15-00302-CV, 2016 WL 1588400 (Tex. App.—San
   Antonio Apr. 20, 2016, no pet.) (mem. op.) .......................................................35

*City of San Antonio ex rel. City Pub. Serv. Bd. v. Wheelabrator Air
   Pollution Control, Inc.*,
   381 S.W.3d 597 (Tex. App.—San Antonio 2012, pet. denied)........................35

*Creedmoor-Maha Water Supply Corp. v. Tex. Comm'n on Envtl.
   Quality*,
   307 S.W.3d 505 (Tex. App.—Austin 2010, no pet.).........................................29

*Ghidoni v. Bexar Metro. Water Dist.*,
   No. 04-07-00377-CV, 2007 WL 2481034 (Tex. App.—San
   Antonio Sept. 5, 2007, no pet.) (mem. op.) .......................................................35

*Hendee v. Dewhurst*,
   228 S.W.3d 354 (Tex. App.—Austin 2007, pet. denied) .................................25

*Klumb v. Houston Municipal Employees Pension System*,
   458 S.W.3d 1 (Tex. 2015)..................................................................31, 32

*Lawson v. Keene*,
No. 03-13-00498-CV, 2016 WL 767772 (Tex. App.—Austin Feb. 23, 2016, pet. denied) (mem. op.)................................................................31

*Lower Colorado River Authority v. City of Boerne*,
422 S.W.3d 60 (Tex. App.—San Antonio 2013, pet. dism'd) ..........................35

*National Public Finance Guarantee Corporation v. Harris County-Houston Sports Authority*,
448 S.W.3d 472 (Tex. App.—Houston [1st Dist.] 2014, no pet.).....................34

*Reata Construction Corp. v. City of Dallas*,
197 S.W.3d 371 (Tex. 2006) ....................................................................passim

*Redburn v. Garrett*,
Case. No. 13-12-00215-CV, 2013 WL 2149699 (Tex. App.—Corpus Christi May 16, 2013, pet. denied) (mem. op.).....................................22

*Saifi v. City of Texas City*,
No. 14-13-00815-CV, 2015 WL 1843540 (Tex. App.—Houston [14th Dist.] Apr. 23, 2015, no pet.) ...........................................................32, 33

*San Antonio River Authority v. Austin Bridge & Road, L.P.*,
No. 04-16-00535-CV, 2017 WL 3430897 (Tex. App.—San Antonio Aug. 9, 2017, pet. filed) (mem. op.)...............................................34, 35

*Sharyland Water Supply Corp. v. City of Alton*,
354 S.W.3d 407 (Tex. 2011) .......................................................................23

*Sweeny Cmty. Hosp. v. Mendez*,
226 S.W.3d 584 (Tex. App.—Houston [1st Dist.] 2007, no pet.).....................18

*Taylor v. State Farm Lloyds, Inc.*,
124 S.W.3d 665 (Tex. App.—Austin 2003, pet. denied) .................................46

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
852 S.W.2d 440 (Tex. 1993) ..............................................................25, 30, 36

*Tex. Dep't of State Health Servs. v. Balquinta*,
429 S.W.3d 726 (Tex. App.—Austin 2014, pet. dism'd)............................25, 36

*Tex. Dept. of Transp. v. Sefzik*,
355 S.W.3d 618 (Tex. 2011) .......................................................................36

*Tex. Parks & Wildlife Dep't v. Sawyer Trust*,
354 S.W.3d 384 (2011)............................................................36

*Texas Association of School Boards Risk Management Fund v.
Benavides Independent School District*,
221 S.W.3d 732 (Tex. App.—San Antonio 2007, no pet.) .........................29, 30

*Texas Dep't of Pub. Safety v. Moore*,
985 S.W.2d 149 (Tex. App.—Austin 1998, no pet.)............................................46

*Texas Dept. of Banking v. Mount Olivet Cemetery Ass'n*,
27 S.W.3d 276 (Tex. App.—Austin 2000, pet. denied) ....................................45

*Texas Natural Resources Conservation Commission v. IT-Davy*,
74 S.W.3d 849 (Tex. 2002)............................................................28, 32

*Unauthorized Practice of Law Cmte. v. Nationwide Mut. Ins. Co.*,
155 S.W.3d 590 (Tex. App.—San Antonio 2004, pet. denied)........................46

*Wood v. Walker*,
279 S.W.3d 705 (Tex. App.—Amarillo 2007, no pet.) ......................................44

*Zachry Corporation v. Port of Houston Authority*,
449 S.W.3d 98 (Tex. 2014)..................................................30, 31, 32

*Zurita v. SVH-1 Partners, Ltd.*,
No. 03-10-00650-CV, 2011 WL 6118573 (Tex. App.—Austin
Dec. 8, 2011, pet. denied) (mem. op.) ......................................................39

**STATUTES**

TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(a)......................................................25

TEX. LOCAL GOV'T CODE ANN. § 271.152 ...................................................passim

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY (10 ed. 2014) ................................................................22

HOUSE COMM. ON CIVIL PRACTICES, Bill Analysis, Tex. H.B. 2039,
79th Leg., R.S. (2005)................................................................27

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11 ed. 2003) ............................22

## STATEMENT OF THE CASE

*Nature of the Case:*

This is an interlocutory appeal of the trial district court's denial of (1) a governmental unit's plea to the jurisdiction and (2) a privately owned entity's plea to the jurisdiction.

The underlying case involves various claims asserted by Carowest Land, Ltd. ("Carowest") against the City of New Braunfels (the "City") and YC Partners, Ltd. d/b/a Yantis Company ("Yantis"), as well as counterclaims by the City against Carowest. The parties' claims center around two municipal projects—the so-called South Tributary Project and North Tributary Project—for which Yantis was the general contractor.

This appeal involves two declaratory judgment claims asserted by Carowest against the City and Yantis concerning the South Tributary Project ("South Tributary Claims"). This Court previously affirmed the district court's denial of the City's plea to the jurisdiction as it concerns these claims. *See City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501 (Tex. App.—Austin 2014, no pet.) (*Carowest I*). After *Carowest I*, Carowest won summary judgment on liability on the two South Tributary Claims, CR 55-56, and these claims were severed into a separate action, CR 57-59. With only the issue of attorneys' fees to be decided in the severed cause, the City filed another plea to the jurisdiction and was this time joined Yantis. CR 77-130, 131-98.

In the renewed pleas, the City and Yantis rely on this Court's 2017 opinion regarding Carowest's declaratory judgment claims concerning the North Tributary Project. *See City of New Braunfels v. Carowest Land, Ltd.*, --- S.W.3d ---, No. 03-16-00249-cv, 2017 WL 2857142 (Tex. App.—Austin, June 29, 2017 mtn. for reh'g pending) (*Carowest II*). This appeal is solely about the South Tributary Claims. *Carowest II* did not address the South Tributary Claims or their distinct jurisdictional bases.

*Trial Court:*

Hon. Margaret G. Mirabal, sitting by appointment in the 22nd Judicial District Court, Comal County, Texas

*Trial Court Disposition:*

The district court denied both the City's and Yantis's pleas to the jurisdiction. CR 1048, CR 1049.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Carowest Land, Ltd. believes that oral argument will likely be unnecessary because this Court has already decided the issues presented in this appeal in *Carowest I* and should therefore affirm in this case as well. However, if the Court has any questions or concerns about the issues in this case, Carowest conditionally requests oral argument. Carowest would welcome the opportunity to address any questions the Court may have and, if necessary, the impact of *Carowest I* and *Carowest II* on the issues presented.

# ISSUES PRESENTED

## Issues as to the City

### ISSUE ONE

The City asserted an affirmative counterclaim against Carowest, alleging that Carowest breached its contractual obligation to indemnify and hold the City harmless for certain delay claims asserted by Yantis and seeking monetary relief.

Did the district court properly conclude that because the City asserted an affirmative breach of contract claim against Carowest, the City is not immune from Carowest's South Tributary Claims concerning the same contract, as those declaratory judgment claims are germane to, connected with, and properly defensive to the City's breach of contract claim?

### ISSUE TWO

Carowest entered into a written contract with the City that both parties concede is subject to Chapter 271, Subchapter I ("Chapter 271") of the Texas Local Government Code and the waiver of governmental immunity contained therein.

Does Chapter 271 waive the City's governmental immunity from Carowest's South Tributary Claims arising from that same contract?

### ISSUE THREE

The declarations Carowest seeks against the City are intertwined with and defensive to the City's pending breach of contract claim against Carowest.

Do Carowest's South Tributary claims implicate a justiciable controversy?

**Issues as to Yantis**

### ISSUE FOUR

Yantis, a privately owned entity, filed its own interlocutory appeal from the trial court's refusal to dismiss Carowest's South Tributary Claims against Yantis for lack of jurisdiction.

Is the City an indispensable party to Carowest's South Tributary Claims against Yantis even though the declarations Carowest seeks against Yantis would not prejudice any rights of the City?

### ISSUE FIVE

Upon Yantis's assertion of a delay claim against the City, the City sought indemnity from Carowest pursuant to a written contract between the City and Carowest. Carowest, in turn, filed a declaratory judgment action against the City and Yantis under that contract regarding the validity of Yantis's delay claim and Carowest's indemnification obligation.

Do Carowest's South Tributary Claims implicate a justiciable controversy?

**STATEMENT OF FACTS**

Carowest is a tax-paying citizen of the City of New Braunfels, which owns the property where the Weston family resides (the "Property"). The Westons, through Carowest, agreed to donate a tract of land on the Property worth approximately $1 million to the City for the South Tributary Regional Flood Control Project ("South Tributary Project"), a multi-million-dollar drainage project designed to channel run-off waters down a large drainage channel to the Guadalupe River. *See* CR 359-60. In 2008, a dispute arose between the City and Carowest regarding various issues related to the South Tributary Project. *See* CR 360-62. This dispute was initially resolved, without litigation, by a July 27, 2009 Letter Agreement between Carowest and the City (the "Letter Agreement"). *See* CR 85-89. The Letter Agreement included the following essential terms, among others:

- The City allowed Carowest to modify the location and design of the channel on the Property (the "Modification").

- Carowest agreed to pay for additional engineering and construction costs "directly related to analyzing and implementing the Modification" (the "Modification Costs"). Modification Costs did not include "any costs the City would have incurred without the Modification."

- Carowest further agreed to indemnify the City for claims brought against the City by Yantis, the general contractor on the South Tributary Project, if such claims were for a Modification Cost and directly attributable to the Modification.

1

CR 85-86. Only the Letter Agreement's indemnity provision is at issue in this appeal.

***The City demands that Carowest indemnify it against delay claims that Yantis had previously released.***

On October 21, 2009, the City and Yantis executed Change Order No. 3 (the "Change Order"). CR 94. The Change Order removed from Yantis's contract with the City all work on the Carowest Property and awarded Yantis additional work of equal or greater value elsewhere on the South Tributary Project. *Id.* In the Change Order, Yantis agreed that the "Change Order includes any and all costs associated with or resulting from the change(s) ordered herein, including all impact, delays, and acceleration costs" and that "there shall be no further time or dollar compensation as a result of this Change Order," thereby releasing all of its claims against the City concerning the Carowest portion of the South Tributary Project. *Id.* Neither the City nor Yantis disclosed to Carowest the existence of the Change Order when it was executed. *See* CR 23.

Instead, on March 10, 2010, despite having released all of its claims against the City concerning the Carowest portion of the South Tributary Project, Yantis presented a $556,248 claim to the City for alleged work delays on the Carowest Property. *See* CR 92-94. Over two months later, relying on the Letter Agreement, the City referred this delay claim, including a copy of the previously undisclosed Change Order, to Carowest and demanded that Carowest "negotiate

2

with Yantis and work out a payment." CR 90-94. Carowest denied both that it was liable for any delays and that any alleged delays arose from the channel Modification. *See* CR 364.

On May 31, 2010, Yantis executed another release of all delay claims in connection with its application to the City for a progress payment on the South Tributary Project (the "Waiver"). *See* CR 979-80 ("For and in consideration of $83,324.15, representing a progress payment on the above-referenced project . . . Yantis hereby acknowledges complete satisfaction of, and waives and releases, any and all claims of every kind against Owner, the Project and the property . . . ."). Notwithstanding the fact that Yantis had now already twice released any claims related to the Carowest portion of the South Tributary Project, the City made repeated demands, by letters of May 13, 2010 and June 10, 2010, that Carowest "negotiate with Yantis and work out a payment, if any, for delay damages." CR 90-94, CR 95-97.

On July 18, 2010, almost nine months after executing the Change Order, Yantis re-submitted its delay claim to the City, this time seeking $276,270.80 in delay damages purportedly related to the Carowest portion of the South Tributary Project (the "Delay Claim"). *See* CR 99. The City notified Yantis (copying Carowest) that it was demanding that Carowest handle the claim, *see* CR 98, and then referred the Delay Claim to Carowest, demanding that Carowest

3

indemnify and defend the City, *see* CR 99-100. Carowest again denied there had been any delays for which it was responsible. *See* CR 364. Following a series of additional communications between Carowest and the City regarding the Delay Claim, the City finally acknowledged in an October 8, 2010 letter to Yantis (copying Carowest) that "based on the execution of change order number three, Yantis has waived 'any and all costs associated with or resulting from the change(s) ordered herein, including all impact, **delays**, and acceleration costs.'" CR 103 (emphasis in original). However, at no point did the City rescind its demand that Carowest handle the bogus claim, and at no point did Yantis abandon its Delay Claim.

***Carowest seeks declarations regarding the validity of the Delay Claim and Carowest's alleged obligation to indemnify the City.***

In response to the City's continued pursuit of Carowest, Carowest filed a declaratory judgment action against both the City and Yantis on November 3, 2010, seeking declarations that: (1) Yantis had no right to damages under the Delay Claim; and (2) the City therefore had no right to indemnification from Carowest. *See* CR 5-12. Carowest subsequently amended its petition to seek additional declarations against the City and Yantis that (1) "the October 21, 2009 Change Order released any delay claim that existed before that date," and (2) "the May 31, 2010 progress payment fully and finally released any delay claim that existed before that date" (collectively, with the declaratory judgment claims filed

4

on November 3, 2010, the "South Tributary Claims"). *See* CR 13.[1] Carowest also asserted other claims, including a breach of contract claims against the City. *Id.*[1]

On November 29, 2010, the City filed its first Plea to the Jurisdiction, Supp. CR 4-8, which it subsequently amended on January 27, 2011, CR 459-65. The district court denied the City's plea to the jurisdiction on March 17, 2011. CR 467-68. The City then perfected an appeal of the order denying its plea, CR 470-78, but subsequently filed a motion to dismiss its own appeal, CR 480-81, which was granted by this Court, CR 483-85.

### The City asserts affirmative counterclaims against Carowest.

After moving to dismiss its own appeal, the City returned to district court and asserted various counterclaims, alleging that Carowest had materially breached the Letter Agreement, including its indemnification provision, and related contracts and seeking, among other relief, monetary damages in excess of $843,000. *See* CR 833-38. The City's breach of contract counterclaim, which remains pending in Cause No. C2010-1519D (the "2010 Cause"), specifically alleges, among other things, that:

> *Carowest breached the Letter Agreement by refusing to indemnify and hold the City harmless for Yantis's delay claim.* Carowest further breached Sections 2 and 3 of the

---

[1] On January 2, 2018, Carowest and Yantis filed a joint request to supplement the Clerk's Record with items previously designated by the parties. Because the Clerk's Record contains only the first page of Carowest's Second Amended Petition, Carowest has cited to that page. A complete copy of Carowest's Second Amended Petition is attached hereto as Exhibit 1.

Letter Agreement by filing suit against the City in connection with the delay claim, causing the City to suffer harm, including attorneys' fees and costs. Such breaches were material. The City has incurred, and is entitled to recover, damages as a result of Carowest's breaches of the Letter Agreement.

CR 49 (emphasis added). Notably, the City's statement of facts on appeal makes no mention of its pending breach of contract claim against Carowest, even though the City took the position in opposing Carowest's motion to sever the South Tributary Claims that its counterclaim is "interwoven with" and "implicate[s] the exact same provision of the exact same contract" as the South Tributary Claims.[2] Supp. CR 249-50.

***In 2011, Carowest amended its pleading to assert the North Tributary Claims based on the City's violations of the Texas Open Meetings Act and competitive bidding statutes.***

In addition to the South Tributary Project, the City planned another similar drainage project to channel run-off waters to the Guadalupe River (the "North Tributary Project"). *See* CR 25. Yantis was one of several contractors to submit bids when the City initiated a public bidding process for the North Tributary Project in March 2011. *See* CR 206-07. Although Yantis's total base bid was not the lowest bid received for that project, the City used an alternate

---

[2]      Although the City shamelessly characterizes Carowest's claims that remain pending in the 2010 Cause as "frivolous," City Br. at 9 n.3, its recitation of facts never mentions its own pending counterclaims over the same contract.

method for tabulating the bids and recommended that Yantis be awarded the contract. *See* CR 25, CR 207.

The New Braunfels City Council met on May 9, 2011 to decide whether and whom to award the $5 million North Tributary construction contract. *See* CR 206. Just hours before the meeting, Yantis offered to release its Delay Claim related to the South Tributary Project, which it had already twice released,[3] but only if the City Council awarded Yantis the North Tributary contract that very evening. *Id.* The City accepted Yantis's offer, and they executed a "Rule 11 Agreement" pursuant to which Yantis again purportedly released the Delay Claim in a direct quid pro quo exchange for the award of the contract that night.[4] *Id.* The Rule 11 Agreement was not disclosed to the public or other bidders prior to or at the City Council meeting. *See* CR 207. Instead, it was discussed in an improperly noticed, closed, executive session, after which Yantis was awarded the North Tributary contract. *See* CR 206-07. Only after it had awarded the North Tributary contract to Yantis did the City notify Carowest and the public of the covert Rule 11 Agreement. *See* CR 207.

---

[3]     Despite these prior releases, Yantis continued to pursue its Delay Claim.

[4]     The Rule 11 Agreement provides that: Yantis will agree "to fully release the City of New Braunfels from Yantis' asserted delay claim on the South Tributary Project if, after all proper and legal process is completed, Yantis is awarded the North Tributary Contract . . . at the New Braunfels City Council meeting scheduled for this evening." CR 206. It further provides: "If the contract is not awarded to Yantis this evening, this offer is hereby withdrawn." *Id.*

Based on the City's conduct in connection with awarding the contract for the North Tributary Project to Yantis, Carowest promptly amended its pleadings in July 2011 to assert, among other claims, declaratory judgment claims seeking declarations that (1) the City violated the Texas Open Meetings Act ("TOMA") and (2) the North Tributary contract between the City and Yantis was void because it was awarded in violation of competitive bidding requirements in the Texas Local Government Code and the Texas Penal Code (collectively, the "North Tributary Claims"). *See* CR 13.[1]

### In 2014, this Court held that the district court had jurisdiction over all of Carowest's declaratory judgment claims.

On September 1, 2011, the City filed another plea to the jurisdiction. CR 487-502. The district court again denied the City's plea, CR 504-05, and the City again appealed, CR 507-09. On April 30, 2014, this Court issued its opinion in that first interlocutory appeal. *See City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501 (Tex. App.—Austin 2014, no pet.) (*Carowest I*). Holding that the City's immunity was waived as to all of Carowest's declaratory judgment claims, including the South Tributary Claims at issue in this appeal, the Court affirmed the district court's denial of the City's plea to the jurisdiction. *Id.* at 530-35.

With respect to Carowest's South Tributary Claims at issue here, this Court held that jurisdiction existed "by virtue of the waiver of immunity in Local

8

Government Code chapter 271, [subsection] I and the limited jurisdiction that arises by virtue of the City's claim for monetary relief." *Id.* at 534 (footnote omitted). This Court also rejected the City's argument that the claims in this case were moot. *Id.* at 534-35.

***In 2017, this Court wrongly held that the district court lacked jurisdiction over Carowest's North Tributary Claims.***

In accordance with this Court's decision and direct guidance in *Carowest I,* which acknowledged jurisdiction over these claims, Carowest's North Tributary Claims were severed by agreement into a new cause so that the threshold question regarding the legality of awarding the North Tributary Contract to Yantis could be determined. *See* Supp. CR 292-94. Following a trial on the merits, the jury returned a unanimous verdict for Carowest, and the district court rendered judgment consistent with that verdict. *See* CR 137-59. The City and Yantis each appealed. On June 29, 2017, this Court issued its opinion, reversing itself as to the North Tributary Claims and holding that governmental immunity barred Carowest's North Tributary Claims because neither TOMA nor the competitive bidding statutes at issue waived sovereign immunity for declaratory relief.[5] *See City of New Braunfels v. Carowest Land, Ltd.,* --- S.W.3d ---, No. 03-16-00249-

---

[5]    Although not controlling here, the *Carowest II* opinion was, in Carowest's view, wrongly decided. Carowest explained its reasoning for that view in its Motion for Panel Rehearing and Motion for Reconsideration *En Banc*, both filed on August 29, 2017, which remain pending before the Court.

9

CV, 2017 WL 2857142 (Tex. App.—Austin June 29, 2017, mtn. for reh'g pending) (*Carowest II*).

In *Carowest II*, the Court did *not* revisit or reconsider its prior determination in *Carowest I* that the City had waived immunity for Carowest's South Tributary Claims at issue here.

**Carowest's South Tributary Claims have separate and distinct jurisdictional bases from the North Tributary Claims.**

Meanwhile, while *Carowest II* was still pending, the trial court granted Carowest partial summary judgment on the South Tributary Claims. *See* CR 55-56. The Court then granted Carowest's motion to sever these claims into a separate action so that they could become final while the remaining claims between the parties in the 2010 cause proceeded, *see* CR 57-59, leaving only the issue of Carowest's attorneys' fees to be decided.

Before that judgment became final, this Court issued its *Carowest II* opinion. Relying on *Carowest II*, both the City and Yantis filed pleas to the jurisdiction, *see* CR 77-130, CR 131-98, even though all of the City's prior pleas as they relate to Carowest's South Tributary Claims have been denied and such denial was already affirmed by this Court in *Carowest I*. *See* CR 436-37, Supp. CR 89, Supp. CR 102. The City now asserts that the "*exact same jurisdictional defect* as found in *Carowest II* applies to Carowest's UDJA claims in this 2017 cause," City Br. at 11 (emphasis added). But in fact, Carowest has asserted two jurisdictional

10

bases for the South Tributary Claims in this case, both of which are *distinct* from the jurisdictional bases over the North Tributary Claims addressed in *Carowest II*: (1) the City's assertion of affirmative counterclaims against Carowest, and (2) the statutory waiver of immunity contained in Chapter 271 of the Texas Local Government Code. *See* CR 435-86.

The district court properly denied both the City's and Yantis's pleas. CR 1048, CR 1049.[6] Pursuant to this Court's analysis in *Carowest I*, the denial of the City's plea to the jurisdiction should be affirmed.[7]

---

[6]    In the underlying litigation, three experienced judges (Hon. Charles Ramsay, Hon. Paul Davis, and Hon. Margaret Mirabal) denied each of the City's multiple pleas to the jurisdiction.

Additionally, as it concerns Carowest's South Tributary Claims, the grounds for dismissal that the City asserts in its renewed plea to the jurisdiction are substantively the same as those asserted in its earlier pleas. Because the City's renewed plea is, in essence, a motion to reconsider its earlier plea, Carowest respectfully suggests that this Court lacks jurisdiction to consider the merits of the City's interlocutory appeal. *See City of Houston v. Estate of Jones*, 388 S.W.3d 663, 667 (Tex. 2012) (holding that when a governmental entity, like the City, files a plea to the jurisdiction or other procedural vehicle raising the same grounds as it did in a plea to the jurisdiction previously denied by the trial court, the renewed plea is "substantively a motion to reconsider the denial of [the original] plea" and that "[t]he court of appeals [does] not have jurisdiction to consider any part of the merits of the interlocutory appeal" unless new facts or law justify reconsideration); *see also City of Houston v. Atser, L.P.*, 403 S.W.3d 354, 359 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding that because the City failed to file a notice of interlocutory appeal within twenty days of the trial court's order denying the City's original plea to the jurisdiction, the court of appeals lacked jurisdiction to consider the merits of the City's interlocutory appeal of an order denying the City's motion for summary judgment, which raised the same immunity arguments).

If this Court were to conclude that the City has presented new law sufficient to justify reconsideration of its Chapter 271 argument, then at the very least the City's appeal should be dismissed insofar as it alleges that Carowest's South Tributary Claims are barred by governmental immunity even though the City elected to assert affirmative claims for relief. The City presents no new facts or law that justify this Court's reconsideration of its prior holding that jurisdiction over Carowest's South Tributary Claims is proper under *Reata Construction Corp. v. City of Dallas*, 197 S.W.3d 371, 377 (Tex. 2006) and its progeny.

11

## SUMMARY OF THE ARGUMENT

In *Carowest I*, this Court affirmed the district court's denial of the City's plea to the jurisdiction on the South Tributary Claims—the only two declaratory judgment claims at issue in this case. Although this Court subsequently held in *Carowest II* that *different* declaratory judgment claims—the North Tributary Claims—asserted by Carowest against the City are barred by governmental immunity, the Court did not reconsider its prior determination in *Carowest I* that the South Tributary Claims are *not* barred by immunity. Indeed, the Court had no reason to revisit its prior holding in *Carowest I* because the jurisdictional bases for the South Tributary Claims and the North Tributary Claims are distinct. As this Court held in *Carowest I*, the district court has jurisdiction over the South Tributary Claims by virtue of the City having asserted affirmative claims for relief against Carowest and by virtue of the statutory waiver of immunity in Chapter 271 of the Texas Local Government Code. *Carowest I*, 432 S.W.3d at 534-35. The district court thus properly denied the City's plea to the jurisdiction.

Under settled law, a governmental entity does not enjoy immunity from suit for offsetting claims against it that are "germane to, connected with, and

---

7    Carowest has filed a motion to dismiss Yantis's appeal for lack of jurisdiction. If this Court declines to dismiss Yantis's appeal, it should affirm the district court's denial of Yantis's plea to the jurisdiction.

12

properly defensive to" affirmative claims asserted by the entity. *Reata Construction Corp. v. City of Dallas*, 197 S.W.3d 371, 377 (Tex. 2006). The City has asserted affirmative counterclaims against Carowest, including a pending claim that Carowest breached the same provision of the same contract on which Carowest's South Tributary Claims are based. Having elected to seek affirmative relief against Carowest, the City cannot now claim immunity from the South Tributary Claims.

Even if this Court were to conclude that the City's assertion of affirmative claims for relief did not abrogate its immunity, jurisdiction still exists over the South Tributary Claims because Chapter 271 independently waives the City's immunity. Section 271.152 of the Texas Local Government Code provides that "[a] local governmental entity that . . . enters into a contract subject to this subchapter *waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract*." TEX. LOCAL GOV'T CODE ANN. § 271.152 (emphasis added). It is fundamental that the Uniform Declaratory Judgments Act ("UDJA") provides a remedy where subject matter jurisdiction already exists. Here, the underlying subject matter of Carowest's declaratory judgment claims—a contract that the City concedes is subject to Section 271.152—falls squarely within Chapter 271's waiver of immunity. Because the Legislature waived immunity as to Carowest's breach of contract claims, it also waived immunity as to Carowest's

13

declaratory judgment claims based on the same contract. The City's contrary contention that Chapter 271 does not "expressly waive" immunity for declaratory relief is both inconsistent with the principle that declaratory relief is "procedural" in nature and conflicts with Texas Supreme Court authority. Consequently, this Court must affirm the district court's denial of the City's plea to the jurisdiction.

This Court has also already rejected the City's argument that the district court lacks jurisdiction over Carowest's South Tributary Claims based on the doctrine of mootness. The City has asserted a breach of contract claim against Carowest alleging that Carowest breached the Letter Agreement's indemnification provision. Even accepting as true the City's and Yantis's assertion that the Delay Claim was released, at the latest, in 2011, such release does not moot the South Tributary Claims. The declarations Carowest seeks regarding the validity of Yantis's Delay Claim and the timing of its release bear on Carowest's past compliance with the Letter Agreement. Because the City's breach of contract claim against Carowest remains pending in the 2010 Cause, Carowest's South Tributary Claims continue to implicate a live and justiciable controversy. Additionally, even if this Court were to conclude that Carowest's South Tributary Claims are moot, Carowest's claim for attorneys' fees presents a live and justiciable controversy over which the district court has jurisdiction.

14

As it concerns Yantis's appeal, Carowest has filed a motion to dismiss for lack of jurisdiction because no statute authorizes the interlocutory appeal of an order denying a plea to the jurisdiction by a privately owned entity. If, however, this Court declines to dismiss Yantis's appeal, it should affirm the district court's denial of Yantis's plea to the jurisdiction. First, the City is not an indispensable party to Carowest's declaratory judgment claims against Yantis because the South Tributary Claims do not seek to void any contract to which the City is a party, as Yantis erroneously asserts. Second, the South Tributary Claims implicate a justiciable controversy. All that is required for a court to proceed on a declaratory judgment action is a threat of imminent litigation or likely injury. When Carowest filed the South Tributary Claims, the disagreement between the City and Carowest regarding the scope and application of the Letter Agreement's indemnification provision had, at the very least, manifested the ripening seeds of a controversy, if not matured into an actual controversy. Yantis's claim that the controversy remained hypothetical lacks any merit in light of the fact that the City has filed an affirmative counterclaim against Carowest alleging that Carowest breached the Letter Agreement's indemnification provision.

For the foregoing reasons, this Court should affirm the district court's denial of both the City's and Yantis's jurisdictional pleas.

15

## ARGUMENT

**I. The trial court properly denied the City's plea to the jurisdiction as to Carowest's South Tributary Claims.**

**A. Carowest's South Tributary Claims against the City are not barred by governmental immunity.**

The City's assertion that "the exact same jurisdictional defect as found in *Carowest II* applies to Carowest's UDJA claims" in this case is patently incorrect. City Br. at 11. The Court in *Carowest II* did not address the jurisdictional basis for either of the two declaratory judgment claims here. Instead, this Court concluded that jurisdiction was lacking over the North Tributary Claims because neither TOMA nor the competitive bidding statutes at issue expressly waived governmental immunity for declaratory relief. *See Carowest II*, 2017 WL 2857142, at *4-6. Here, by contrast, jurisdiction over the South Tributary Claims exists because: (1) the City asserted counterclaims for affirmative relief against Carowest, and (2) Chapter 271 of the Texas Local Government Code waives immunity for declaratory judgment claims arising from contracts subject to that chapter. The distinct jurisdictional bases for the South Tributary Claims were not even considered by the Court in *Carowest II*, which concerned only the North Tributary Claims. This case, in fact, is governed by the Court's opinion in *Carowest I*, which affirmed the denial of the City's plea to the jurisdiction as to the very same South Tributary Claims at issue here because, as the Court held, (1) the City left its "sphere of immunity from suit" by asserting claims for affirmative

16

relief against Carowest, and (2) the claims fall "within the district court's jurisdiction to adjudicate by virtue of the waiver of immunity in Local Government Code chapter 271, [subchapter] I." *Carowest I*, 432 S.W.3d at 523, 534-35.

### 1. Jurisdiction over Carowest's South Tributary Claims exists because the City asserted an affirmative counterclaim alleging breaches of the Letter Agreement.

Under settled law, a governmental entity cannot seek affirmative relief on one hand and claim immunity from related claims by that party against it on the other. In *City of Dallas v. Albert*, the Supreme Court explained that the City could not claim immunity because it had filed a counterclaim and could not "reinstate" its immunity by a subsequent nonsuit. 354 S.W.3d 368, 375-77 (Tex. 2011). *Albert* thus clarified and reaffirmed the Supreme Court's prior holding in *Reata*,[8] that a governmental entity does not enjoy immunity from suit for claims against it that are "germane to, connected with, and properly defensive to" affirmative claims

---

[8] Although the *Reata* rule has at times been described as creating a limited waiver of sovereign immunity, the Supreme Court has characterized the *Reata* rule as a situation in which immunity simply does not exist, rather than a situation in which immunity is waived. *See, e.g.*, *Albert*, 354 S.W.3d at 374 ("Although litigation actions of governmental entities underlay our decisions in *Reata* and similar cases, we did not hold that those actions effected waivers of immunity; rather, they were factors considered in defining the contours of immunity."); *City of Midland v. Goerlitz*, 201 S.W.3d 689, 690 (Tex. 2006) (remanding to give plaintiff an "opportunity to argue . . . that the City's immunity from suit either does not exist pursuant to our decision in *Reata* or that it has been waived by [Chapter 271]"); *City of Houston v. United Water Servs.*, 201 S.W.3d 690, 691 (Tex. 2006) (same).

17

asserted by the entity, to the extent the claims against the entity offset the entity's claims.[9] *Albert*, 354 S.W.3d at 374-75.

As Justice Brister explained in his concurring opinion in *Reata*: "[W]hen the government brings its own affirmative claims, it has obviously concluded that the distraction and expense of litigation is worthwhile in that particular case." *Reata Constr. Corp*, 197 S.W.3d at 382-83 (Brister, J., concurring); *see also Albert*, 354 S.W.3d at 377 ("[A]fter governmental entities decide to litigate, they are bound to participate in the litigation process as an ordinary litigant."). Such is the case here. The City, rather than standing on its initial plea to the jurisdiction, chose to invoke the jurisdiction of the district court and, therefore, is not immune from Carowest's claims concerning the same contract.

The following chronology of pleadings in this case demonstrates that the trial court's denial of the City's plea to the jurisdiction as to Carowest's South Tributary Claims was proper under *Reata* and *Albert*:

- November 3, 2010 – Carowest files Original Petition for Declaratory Relief, CR 5-12;

- November 29, 2010 – City files Original Answer and Plea to Jurisdiction, Supp. CR 4-8;

---

[9]    Courts have acknowledged that the *Reata* rule extends to both contract and tort claims. *See, e.g.*, *Sweeny Cmty. Hosp. v. Mendez*, 226 S.W.3d 584, 592–93 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (by filing affirmative counterclaims, state hospital waived immunity for counterclaims for tortious interference, defamation, and other torts).

18

- January 11, 2011 – Carowest files First Amended Petition against City adding breach of contract claims, Supp. CR 15-24;

- March 17, 2011 – Court denies City's Plea to the Jurisdiction, Supp. CR 89;

- June 16, 2011 – After dismissing its own appeal, City files its Original Counterclaim asserting claims for breach of contract, declaratory relief, and specific performance and seeking to enforce the same Letter Agreement that forms the basis of Carowest's declaratory judgment claims, CR 833-930;

- August 5, 2016 – Court grants partial summary judgment on Carowest's two declaratory judgment claims at issue in this case, CR 55-56; and

- March 21, 2017 – Court severs these declaratory judgment claims into the instant case, Supp. CR 292-94.

As reflected in the above timeline, in June 2011, relying on the Letter Agreement, the City chose to go on the offensive and filed affirmative claims, including a breach of contract claim, seeking monetary relief against Carowest. *See* CR 833-930. Once the City did so, the district court also acquired jurisdiction over Carowest's claims that are "germane to, connected with, and properly defensive to the City's claims, to the extent [Carowest's] claims offset those asserted by the City." *Reata Constr. Corp.*, 197 S.W.3d at 373. Carowest's South Tributary Claims are clearly "germane to and connected with" the City's breach of contract counterclaim—they are based on the same provision of the Letter Agreement. Carowest's claims are also properly defensive to the City's counterclaim because judicial declarations that Yantis's Delay Claim was released

19

in October 2009 or May 2010 and that Carowest therefore never had any obligation to indemnify the City would rebut, at least in part, the City's claim that "Carowest breached the Letter Agreement by refusing to indemnify and hold the City harmless for Yantis's delay claim." CR 49.

In its brief, the City does not deny that it has asserted affirmative counterclaims against Carowest, *see* CR 55-64, or that its counterclaims remain pending in the 2010 Cause from which the South Tributary Claims at issue here were severed. Moreover, in opposing Carowest's motion to sever, the City both affirmed that it "has asserted counterclaims," including a breach of contract claim that "clearly implicates Yantis's Delay Claim," CR 933. The City further stated:

> The claims Carowest seeks to have severed and the City's pending breach of contract counterclaim implicate the exact same provision of the exact same contract. . . . [quoting Letter Agreement § 3]. Because Carowest's claims relating to the Delay Claim and the City's counterclaim relating to the Delay claim are interwoven, severance should not be granted.

CR. 934. In other word, the City essentially conceded that Carowest's South Tributary Claims are germane to, connected with, and properly defensive to the City's breach of contract counterclaim. The City nonetheless asserts that it is immune from the South Tributary Claims because "[d]eclaratory relief, by its nature, does not and cannot operate as an offset." City Br. at 22. The terseness of the City's argument on this point is revealing. It cites only one unreviewed

20

decision, *City of McKinney v. Hank's Restaurant Group*, 412 S.W.3d 102, 116 (Tex. App.—Dallas 2013, no pet.), to support its position. Other than *Hank's*, Carowest has found no case expressly limiting the *Reata* rule to monetary claims, and the City offers no compelling or even plausible reason why a "properly defensive" declaratory judgment claim, such as those asserted by Carowest, could not be said to "offset" the City's breach of contract claim.

Indeed, multiple cases have held that that a governmental entity that asserts claims for affirmative relief is not immune from related declaratory judgment claims under *Reata*. *See, e.g.*, *City of Conroe v. TPProperty LLC*, 480 S.W.3d 545, 569 (Tex. App.—Beaumont 2015, no pet.) ("Most of the declarations [plaintiff] seeks would have the effect of establishing the parties' rights and liabilities under the agreements. We have held the very issues these declarations seek to affirm are within the trial court's jurisdiction to adjudicate by virtue of the City's limited waiver of immunity arising from the City's counterclaims seeking monetary relief."); *Archer Grp., LLC v. City of Anahuac*, 472 S.W.3d 370, 377-78 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (holding that governmental entities were not immune from counterclaims against the entities, including claim for declaratory relief, because counterclaims "were germane to, connected with, and properly defensive to" the entities' affirmative claims for relief); *Carowest I*, 432 S.W.3d at 523, 534 (noting that "the City has left its 'sphere of immunity from

21

suit'" by seeking affirmative relief, and thus rejecting the "City's attempt to raise governmental immunity as a jurisdictional bar to Carowest's declaratory claim founded on the same subject matter"); *Redburn v. Garrett*, No. 13-12-00215-CV, 2013 WL 2149699, at \*10 (Tex. App.—Corpus Christi May 16, 2013, pet. denied) (mem. op.) ("We conclude that appellant's claim for a declaratory judgment that the City 'does not have an easement or other legal authority to enter [appellant's] property' is sufficiently connected to the City's claim that the City has an easement encumbering appellant's property. If it were established, appellant's claim would defeat the City's claim and vice versa. Therefore, the trial court has jurisdiction to hear appellant's claim for declaratory judgment.").

The holdings in these cases also comport with the plain meaning of "offset," which is "something that serves to counterbalance or to compensate for something else." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11 ed. 2003); *see also* BLACK'S LAW DICTIONARY (10 ed. 2014) ("Something (such as an amount or claim) that balances or compensates for something else"). So too are these cases consistent with the policy rationale underlying the judicial abrogation of immunity announced in *Reata*.[10] Here, the City invoked the district court's jurisdiction to

---

[10] In *Reata*, Justice Brister explained the Court's rationale for limiting a governmental entity's abrogation of immunity to "offsetting" claims as follows: "By filing suit on a claim, a government consents to have the courts decide its entitlement to a particular sum of money, but no more." *Reata Constr. Corp.*, 197 S.W.3d at 383 (Brister, J., concurring). *Albert* reiterates that the limitation is intended to preclude a litigant from asserting claims against a governmental

22

decide the City's entitlement to damages for Carowest's alleged breach of the Letter Agreement's indemnification provision. Because Carowest's related declaratory judgment claims do not seek any affirmative monetary relief from the City, much less monetary relief in excess of the amount of damages claimed by the City, the district court also acquired jurisdiction over Carowest's South Tributary Claims. As the court in *Bandera County v. Hollingsworth* cogently explained:

> In *Reata*, the court noted that the considerations underlying immunity from suit were not adversely implicated by its holding. By choosing to engage in litigation to assert its own affirmative claims for monetary damages, the entity has presumably made a decision to expend resources to pay litigation costs. Because the opposing party's claims can operate only as an offset to reduce the government's recovery, the fiscal planning of the entity should not be disrupted. . . . . Similarly, in this case, "we see no ill befalling the governmental entity or hampering of its governmental functions" by allowing [plaintiffs] to assert a . . . bare declaratory judgment claim [that] does not seek monetary relief and does not seek to affect the County's policymaking functions. . . . We hold the County is not immune from that claim and the trial court did not err in denying the plea to the jurisdiction with respect to that claim.

419 S.W.3d 639, 644-45 (Tex. App.—San Antonio 2013, no pet.) (internal citations omitted); *cf. Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 413-14 (Tex. 2011) (assuming that declaratory judgment counterclaim

---

entity that are "for amounts over and above the amount that would offset the [entity's] claim." *Albert*, 354 S.W.3d at 374.

asserted by governmental entity, absent an accompanying claim for monetary damages, would fall within *Reata*'s offset holding and thereby abrogate governmental immunity).

Because Carowest has established that jurisdiction exists over its South Tributary Claims under *Reata* and its progeny, no separate statutory waiver of immunity is required. This Court should therefore affirm the trial court's denial of the City's plea to the jurisdiction.

**2. Jurisdiction over Carowest's South Tributary Claims exists pursuant to Texas Local Government Code Section 271.152.**

Even if this Court were to conclude that jurisdiction is lacking over Carowest's South Tributary Claims notwithstanding the City's assertion of affirmative claims for relief under the same contract, the trial court would still have had jurisdiction because Chapter 271 independently waives the City's immunity from Carowest's claims.

Section 271.152 of the Texas Local Government Code ("Section 217.152") provides that "[a] local governmental entity that . . . enters into a contract subject to this subchapter *waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract*." TEX. LOCAL GOV'T CODE ANN. § 271.152 (emphasis added). In its prior briefing, the City acknowledged that it "agreed to be bound by the provisions of Chapter 271 of the Local Government Code concerning the July 27, 2009 Letter Agreement between

24

the City and Carowest." CR 809. Moreover, the City does not contend here that the Letter Agreement falls outside the scope of Chapter 271. Instead, the City argues that Chapter 271 waives immunity only for "a claim for breach of contract" seeking monetary damages, not for a declaratory judgment claim, even if such claim arises from a contract subject to Section 271.152. *See* City Br. at 16-22. This argument misconstrues the fundamental nature of declaratory relief.

The UDJA neither confers new substantive rights upon parties nor augments a court's subject matter jurisdiction; it is rather "a procedural device for deciding cases already within a court's jurisdiction." *See, e.g.*, *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *Hendee v. Dewhurst*, 228 S.W.3d 354, 379 n.31 (Tex. App.—Austin 2007, pet. denied) (UDJA "provide[s] a remedy where subject matter jurisdiction otherwise exists"); TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(a) ("A court of record *within its jurisdiction* has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.") (emphasis added). Thus, governmental immunity does not bar a declaratory judgment action where the legislature has waived immunity as to the underlying "subject matter of the claim." *Tex. Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 746 (Tex. App.—Austin 2014, pet. dism'd).

25

The "procedural" as opposed to "substantive" nature of declaratory relief is critically important. Here, the underlying subject matter of Carowest's declaratory judgment claims—the Letter Agreement that the City acknowledges is subject to Section 271.152—falls squarely within the statute's waiver of governmental immunity. Because the Legislature waived immunity as to Carowest's breach of contract claims, it also waived immunity as to Carowest's declaratory judgment claims based on the same contract. As discussed below, this result is consistent with both the language and purpose of Chapter 271, as well as Texas Supreme Court jurisprudence.

Chapter 271 waives a local governmental entity's immunity for cases "adjudicating a claim for breach of the contract." TEX. LOCAL GOV'T CODE § 271.152. The plain text of the statute does not exclude declaratory relief from the scope of its waiver. Moreover, the Supreme Court has concluded that Chapter 271 waives immunity from suit for a declaratory judgment action that seeks to construe a contract that would otherwise fit within the statute—*i.e.*, a "contract subject to this subchapter." *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 326-28 (Tex. 2006).

In *Ben Bolt*, a school district sued a political subdivision's joint self-insurance fund after the fund denied the school district's claim for water damage.

*Id.* at 322-23. The school district brought a declaratory judgment action against the fund seeking only a declaration that the water damage was a covered loss; the district did not plead for contract damages. *Id.* The Court rejected the fund's claim that it was immune from suit, concluding that any such immunity was waived pursuant to Section 271.152. *Id.* at 328 (Section 271.152 "waives the Fund's immunity from Ben Bolt's claim *arising out of* the insurance agreement between the parties.") (emphasis added). In reaching this conclusion, the Court looked to the legislative history of Chapter 271 and explained that "the Legislature intended to loosen the immunity bar so 'that *all* local governmental entities that have been given or are given the statutory authority to enter into contracts shall not be immune from suits arising from those contracts.'" *Id.* at 327 (quoting HOUSE COMM. ON CIVIL PRACTICES, Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005)).

As in *Ben Bolt*, Carowest's South Tributary Claims against the City arise out of a contract that is subject to Section 271.152. Indeed, the City admits that much. Through its declaratory judgment claims, Carowest seeks to adjudicate the City's allegation that Carowest breached its obligation under the Letter Agreement to indemnify and hold the City harmless. Those claims, just like a breach of contract claim, come within the scope of Chapter 271's waiver. Furthermore, Carowest has asserted claims against the City alleging multiple

breaches of the City's contractual obligations under the Letter Agreement, which remain pending in the 2010 Cause. *See* CR 15-44. Hence, Carowest is seeking declaratory relief as a defense against the City's breach of contract counterclaim and in connection with Carowest's own breach of contract claim,[11] not a mere declaration of rights in order to extract attorneys' fees from the City, as the City repeatedly avers.[12] *See* City Br. at 1-2, 20.

The City's arguments that Chapter 271 does not waive immunity for declaratory relief lack merit. First, the City cites *Texas Natural Resources Conservation Commission v. IT-Davy*, 74 S.W.3d 849, 855-56 (Tex. 2002), for the proposition that suits "against the government seeking to establish a contract's validity, or to enforce performance under a contract, or to impose contractual liabilities, are barred by immunity because such suits attempt to control state action." City Br. at 15. Although the UDJA admittedly does not alter this rule, the City ignores the effect of Chapter 271's enactment in 2005 (after *IT-Davy* was

---

[11]     That Carowest's South Tributary Claims in this suit were severed, for efficiency, into a separate action following a grant of partial summary judgment in Carowest's favor does nothing to change this fact.

[12]     Omitting the critical fact that the City initiated this dispute by seeking indemnification for Yantis's purported delay claim from Carowest, the City maintains that the Legislature did not design Chapter 271 to "allow a company that disputes the terms of its contract with a municipality to file a lawsuit merely to get a declaration of its rights under the contract, when the company has suffered no harm from the contract dispute, and then seek recovery from the municipality in the form of attorneys' fees." City Br. at 2. Even assuming the City were correct, which it is not, this argument implicates only the waiver of the City's immunity under Chapter 271, not the separate and independent abrogation of the City's immunity by virtue of the City's asserting an affirmative counterclaim against Carowest for breach of the Letter Agreement. *See supra* at Section I.A.1.

28

decided). *IT-Davy* proscribed the use of declaratory judgments to bring a breach of contract claim through the back door at a time when such claims were prohibited because jurisdiction was lacking for the underlying claims. *See, e.g., Creedmoor-Maha Water Supply Corp. v. Tex. Comm'n on Envtl. Quality*, 307 S.W.3d 505, 515 (Tex. App.—Austin 2010, no pet.) (asserting that a declaratory judgment claim is "barred by sovereign immunity if the remedy would have the effect of establishing a right to relief against the [s]tate that implicates sovereign immunity *and for which immunity has not been waived*.") (emphasis added). Chapter 271's broad waiver now permits breach of contract claims to come through the front door. Thus, for claims arising from contracts subject to Chapter 271, there is no longer any concern that litigants could plead declaratory judgment claims in an attempt to obtain contract relief not otherwise available. As the court explained in *Texas Association of School Boards Risk Management Fund v. Benavides Independent School District*:

> If we had held that immunity from suit had not been waived with respect to the contractual claims, then the Fund would have been correct—the School District could not have circumvented immunity by characterizing their dispute as a declaratory-judgment claim. However, because we have held that immunity from suit has been waived, the School District's declaratory-judgment action is not barred by the holding in *IT-Davy*.

221 S.W.3d 732, 740 (Tex. App.—San Antonio 2007, no pet.). The same is true here. Because Chapter 271 waives immunity for Carowest's contractual claims, the holding in *IT-Davy* does not prohibit Carowest's declaratory judgment claims.

Second, the City asserts that *Ben Bolt* is inapposite because the Supreme Court simply assumed that declaratory relief was available under Chapter 271 without specifically addressing the question of whether Chapter 271 waives immunity for declaratory judgment claims. *See* City Br. at 21. But, in reaching its judgment, *Ben Bolt* just applied the well-settled principle that the UDJA is a procedural device for deciding cases that already come within a court's jurisdiction. *See, e.g.*, *Tex. Ass'n of Bus.*, 852 S.W.2d at 444, and its progeny.

Third, contrary to the City's contention, the Supreme Court has not "answered the specific immunity question presented here," thereby *sub silentio* overruling this Court's ruling in *Carowest I*. *See* City Br. at 16-17 (referencing *Zachry Corporation v. Port of Houston Authority*, 449 S.W.3d 98, 105 (Tex. 2014)). In *Zachry*, the Court construed Chapter 271 and concluded that it "does not waive immunity from suit on a claim *for damages not recoverable* under Section 271.153," which places limits on *damages* awards for breach of a contract subject to Chapter 271. *Zachry Constr. Corp.*, 449 S.W.3d at 110. As the City admits, "claims for declaratory relief were not at issue in *Zachry*." *See* City Br. at 16. The Court therefore did not opine on whether immunity is waived under

30

Section 271.152 as it concerns claims for declaratory relief. Nor did the Court announce that it was departing from, much less overruling, its prior decision in *Ben Bolt*[13] or otherwise modifying the established principle that a trial court may award relief under the UDJA when "deciding cases already within [its] jurisdiction." *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996).[14] In fact, the word "declaratory" appears nowhere in *Zachry*.

Even after deciding *Zachry*, the Texas Supreme Court has signaled that Chapter 271's waiver encompasses claims for declaratory relief. In *Klumb v. Houston Municipal Employees Pension System*, Petitioners and the City of Houston sought declaratory and injunctive relief, alleging, among other things, that the pension board acted *ultra vires* by delegating decision-making authority to a committee in violation of a contractual meet-and-confer agreement between the Pension System and the City of Houston. 458 S.W.3d 1, 12 (Tex. 2015). The Court held that this declaratory judgment claim was barred by governmental immunity, pointing to an analytically identical sovereign immunity holding that "declaratory-judgment suits against state officials seeking to establish a contract's

---

[13]   *Zachry* contains a lengthy footnote expressing the Court's disapproval of certain cases "to the extent they are contrary." *Zachry Constr. Corp.*, 449 S.W.3d at 110 n.54. *Ben Bolt* is not among the cases listed.

[14]   Where an intervening Supreme Court opinion, like *Zachry*, is not clearly on point, this Court remains bound by prior on-point Supreme Court precedent. *See Lawson v. Keene*, No. 03-13-00498-CV, 2016 WL 767772, at *4 (Tex. App.—Austin Feb. 23, 2016, pet. denied) (mem. op.). Hence, Carowest's reliance on cases predating and not squarely overruled by *Zachry* is proper.

31

validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State. . . . Consequently, such suits cannot be maintained without legislative permission." *Id.* at 12 (quoting *IT–Davy*, 74 S.W.3d at 855-56). Concluding that "[n]o waiver of immunity is alleged or supported on the record" for petitioner's declaratory judgment claim, the Court further noted:

> Although the Legislature has waived a local governmental entity's sovereign immunity to suit for contracts for goods or services, the waiver does not apply here because the meet-and-confer agreement is not a contract for goods or services.

*Id.* at 12 & n.7 (citing *Zachry Constr. Corp.*, 449 S.W.3d at 106). Certainly the Court would not have cited *Zachry* if Chapter 271's waiver of immunity cannot extend to claims for declaratory relief arising from a contract subject to that chapter.

Unable to marshal any on-point authority from the Texas Supreme Court or this Court expressly stating that Chapter 271 does not waive immunity for declaratory relief, the City looks instead to decisions from other courts of appeals. *See* City Br. at 18-19. But three of the five cases the City cites do not support its blanket contention that "Chapter 271 does not waive immunity for UDJA claims." *Id.* at 18. In *Saifi v. City of Texas City*, the trial court granted the city's plea to the jurisdiction on all of plaintiff's claims, including breach of contract and declaratory judgment claims. No. 14-13-00815-CV, 2015 WL 1843540, at *2 (Tex. App.—

32

Houston [14th Dist.] Apr. 23, 2015, no pet.). On appeal, the Fourteenth Court of Appeals concluded that plaintiff had failed to plead sufficient facts affirmatively demonstrating the existence of a contract subject to Chapter 271 and remanded to give plaintiff an opportunity to amend his pleadings in this regard. *Id.* at *6. With respect to plaintiff's claim for declaratory relief, the court did *not* hold that declaratory relief is unavailable under Chapter 271. Instead, the Court reasoned as follows:

> Because [plaintiff's] requested [declaratory] relief may be sought in connection with his breach of contract claim if he establishes on remand that the City's immunity is waived under Local Government Code section 271.152 . . . we conclude it is unnecessary to reach this issue. However, to the extent [plaintiff] contends that he may separately seek declarations that he is not in breach of the [contract] and is entitled to reinstatement, the *UDJA does not waive the City's immunity for the requested relief*.

*Id.* at *9 (emphasis added). Hence, the court announced it was declining to reach the very issue the City claims *Saifi* supports. Additionally, the court acknowledged that plaintiff *could* seek the declaratory relief requested so long as he could establish a waiver of immunity under Chapter 271 for his breach of contract claim, and then reiterated the settled principle, which Carowest recognizes, that the UDJA does not *itself* give rise to jurisdiction absent a separate waiver of immunity for the underlying cause of action. Because Carowest does not assert that the UDJA confers jurisdiction over its declaratory judgment claims, *Saifi* is inapposite. If

33

anything, *Saifi*'s comment that plaintiff could seek the requested declaratory relief if it were determined that Chapter 271 applied underscores the propriety of the district court's order denying the City's plea to the jurisdiction here.

Similarly, in *National Public Finance Guarantee Corporation v. Harris County-Houston Sports Authority*, plaintiff brought a breach of contract action against the county sports authority and sought declaratory relief against both the sports authority and the convention corporation, which served as stadium landlord. 448 S.W.3d 472, 476 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The First Court of Appeals held that the sports authority had waived immunity under Chapter 1371 of the Government Code, and thus never addressed whether the authority had waived immunity under Chapter 271. *Id.* at 479-82. With respect to the convention corporation, a separate defendant against whom plaintiff did *not* allege any breach of contract, the court narrowly held that Chapter 271 does not "waive[] immunity of a governmental entity that is not alleged to have breached a contract." *Id.* at 484. Because both Carowest and the City allege that the other has committed multiple breaches of the Letter Agreement, which they admit is subject to Chapter 271, *National Public Finance* is also distinguishable.

Third, the court in *San Antonio River Authority v. Austin Bridge & Road, L.P.*, like the Supreme Court in *Zachry*, analyzed whether monetary damages claimed by plaintiffs were recoverable under Section 271.153 such that

immunity had been waived under Section 271.152. No. 04-16-00535-CV, 2017 WL 3430897, at *8 (Tex. App.—San Antonio Aug. 9, 2017, pet. filed) (mem. op.). The court did not specifically opine on the scope of Chapter 271's waiver of immunity insofar as it concerns declaratory judgment claims.

Although the remaining two cases cited by the City—*Lower Colorado River Authority v. City of Boerne*, 422 S.W.3d 60, 66-67 (Tex. App.—San Antonio 2013, pet. dism'd), and *City of Pearsall v. Tobias*, No. 04-15-00302-CV, 2016 WL 1588400, at *2 (Tex. App.—San Antonio Apr. 20, 2016, no pet.) (mem. op.)— hold that Chapter 271 simply does not waive immunity for declaratory relief, *see* City Br. at 18-19, two decisions from one court authored by the same justice cannot outweigh contrary Supreme Court authority or this Court's own authority in *Carowest I*. Hence, the City's assertion that its Chapter 271 argument is "consistent with Texas case law" is an overstatement. *See* City Br. at 18.[15]

---

[15] In analyzing the scope of section 271.152's waiver of immunity and concluding that it does not extend to declaratory judgment claims, *Lower Colorado River Authority* relied on cases holding that section 271.152 does not waive immunity "in the absence of a properly pleaded breach of contract claim." 422 S.W.3d at 67 (citing *City of San Antonio ex rel. City Pub. Serv. Bd. v. Wheelabrator Air Pollution Control, Inc.*, 381 S.W.3d 597 (Tex. App.—San Antonio 2012, pet. denied) (no waiver of immunity under Section 271.152 for *quantum meruit* claim) and *Ghidoni v. Bexar Metro. Water Dist.*, No. 04-07-00377-CV, 2007 WL 2481034, at *1-2 (Tex. App.—San Antonio Sept. 5, 2007, no pet.) (mem. op.) (no waiver of immunity under Section 271.152 for *fraud* claims)). Because the plaintiff in *Lower Colorado River Authority* pled that the city breached a contract subject to Chapter 271, the case is not only distinguishable from the authorities on which it relies, but wrongly decided. So too was *City of Pearsall*, which relied on *Lower Colorado River Authority*, wrongly decided.

Next, the City maintains that where a plaintiff asserts a declaratory judgment claim against a municipality in reliance on a statute other than the UDJA, such statute must expressly provide that it is waiving immunity for *declaratory* relief. *See* City Br. at 19 (citing *Tex. Dept. of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011)). But the authority the City cites does not support its argument on this point. In *Sefzik*, the Texas Supreme Court explained as follows:

> As we have consistently stated, the UDJA does not enlarge the trial court's jurisdiction but is "merely a procedural device for deciding cases already within a court's jurisdiction." *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (2011) (quoting *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)). Accordingly, *the underlying action, if against the state or its political subdivisions, must be one for which immunity has expressly been waived*.

*Sefzik*, 355 S.W.3d at 621-22 (emphasis added); *see also Tex. Dep't of State Health Servs.*, 429 S.W.3d at 746 ("[A] UDJA declaratory claim asserted directly against a state agency or official . . . will ordinarily be barred by sovereign immunity, thereby divesting the trial court of jurisdiction, unless the Legislature has waived immunity as to the *subject matter of the claim*.") (emphasis added). In other words, Texas law permits declaratory relief where there is an express waiver of immunity for the *underlying action* or *subject matter of the claim*. Pursuant to a straightforward application of this principle, when the Legislature waived immunity for breach of contract actions under Chapter 271, it also waived

36

immunity for declaratory judgment actions arising from contracts subject to Chapter 271. That is precisely Carowest's argument here.

Because Carowest has established that Chapter 271 waives immunity for its South Tributary Claims against the City, the district court's denial of the City's plea to the jurisdiction should be affirmed on this independent and alternative basis.

## B. Carowest's South Tributary Claims against the City implicate a justiciable controversy.

The City contends that even if the City has waived immunity, Carowest's South Tributary Claims are now moot in light of the Rule 11 Agreement's purported release of Yantis's Delay Claim. *See* City Br. 23-29. This argument is without merit, and was properly rejected in *Carowest I*. But even if the declaratory relief sought by Carowest were moot, Carowest's claim for attorneys' fees would remain a live controversy over which the Court has subject matter jurisdiction.

### 1. Carowest's declaratory judgment claims are not moot.

"A case becomes moot when: (1) it appears that one seeks to obtain a judgment on some controversy, when in reality none exists; or (2) when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy." *Bexar Metro. Water Dist. v. City of Bulverde*, 234 S.W.3d 126, 131 (Tex. App.—Austin 2007, no pet.). In

37

*Carowest I,* this Court rejected the City's mootness argument, explaining that "even if the release [in the Rule 11 Agreement] is assumed to resolve the delay claim prospectively from the date of its execution, the validity of the delay claim would still remain a live and justiciable issue to the extent it bears upon the parties' past compliance with the Letter Agreement's indemnification provisions." *Carowest I,* 432 S.W.3d at 535. Thus, Carowest's South Tributary Claims continue to implicate a justiciable controversy notwithstanding this Court's subsequent dismissal in *Carowest II* of separate declaratory judgment claims seeking to void the Rule 11 Agreement.[16]

The City has asserted an affirmative claim against Carowest, alleging that Carowest breached the Letter Agreement by "refusing to hold harmless and indemnify the City against Yantis's delay claim." CR 49-50. This claim clearly concerns Carowest's "past compliance with the Letter Agreement's indemnification provisions." *Carowest I,* 432 S.W.3d at 535. The City's assertion that "[t]here is no existing dispute that is dependent on the delay claim being valid or invalid in the time period from October 21, 2009, to May 11, 2011," City Br. at 27, is simply untrue. The City argues that it does "not make any difference" today whether Yantis released its delay claim "in October 2009 or May 2010, as opposed to May 2011." *See* City Br. at 25-26. But the City's contention that the triggering

---

[16]     As previously noted, Carowest's Motion for Panel Rehearing and Motion for Reconsideration *En Banc*, filed in *Carowest II*, remain pending before the Court.

of Carowest's indemnification obligations is unrelated to the validity of Yantis's Delay Claim remains a disputed issue. It is Carowest's position that the declarations it seeks regarding the validity of Yantis's Delay Claim and the timing of its release would rebut the City's pending counterclaim that Carowest breached its obligations to indemnify and hold the City harmless. Because Carowest's South Tributary Claims will have a "practical legal effect on a then-existing controversy," *Bexar Metro. Water Dist.*, 234 S.W.3d at 131, this Court should decline to reverse the trial court's order denying the City's plea to the jurisdiction based on the doctrine of mootness.

### 2. Carowest's claim for attorneys' fees is not moot.

Even if this Court were to conclude that Carowest's South Tributary claims are moot, Carowest's claim for attorneys' fees remains a live, justiciable controversy over which the district court has subject matter jurisdiction. *See, e.g.*, *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005); *Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 150 (Tex. 1988); *see also Zurita v. SVH-1 Partners, Ltd.*, No. 03-10-00650-CV, 2011 WL 6118573, at *8 (Tex. App.— Austin Dec. 8, 2011, pet. denied) (mem. op.) (affirming trial court's award of attorneys' fees where declaratory judgment claims were dismissed as moot and noting that the UDJA "does not require a judgment on the merits of the dispute as a prerequisite to a fee award").

In *Hallman*, landowners sued Hallman for property damages resulting from Hallman's nearby mining activities. 159 S.W.3d at 641. Hallman requested indemnity from his insurance carrier, Allstate, which provided a defense under a reservation of rights and then filed a declaratory judgment suit to determine coverage. *Id*. Hallman filed counterclaims, and both parties sought attorneys' fees. *Id*. The parties filed cross-motions for summary judgment, and the trial court entered judgment in favor of Allstate. *Id*. at 642. The court of appeals reversed, rendered judgment for Hallman, and remanded for further proceedings on attorneys' fees. *Id*. While on appeal to the Texas Supreme Court, the underlying case by the landowners against Hallman settled, and Allstate did not seek reimbursement for its defense. *Id*. In light of these facts, the Court *sua sponte* considered whether the declaratory judgment claim regarding coverage was moot. *Id*. at 643. The Court concluded that even though the underlying lawsuit had been settled, "Hallman's remaining interest in obtaining attorney's fees 'breathes life' into this appeal and prevents it from being moot." *Id*. at 643 (emphasis added).

Similarly, in *Camarena v. Texas Employment Commission*, the Texas Supreme Court held that a dispute over of attorneys' fees remains a live controversy even after a substantive claim for relief becomes moot. In *Camarena*, farm workers sued the Texas Employment Commission seeking to have a statutory agricultural exemption to unemployment benefits declared unconstitutional. 754

40

S.W.2d 149, 150 (Tex. 1988). While the suit was pending, the Texas legislature amended the statute to provide the farm workers with unemployment benefits. *Id*. Addressing whether the amendment rendered the suit moot, the Texas Supreme Court explained:

> Clearly, a controversy exists between the farm workers and the [Texas Employment Commission]. The "live" issue in controversy is whether or not the farm workers have a legally cognizable interest in recovering their attorney's fees and costs. The fact that the Legislature wisely undertook action to bring the farm workers within the scope of [the Texas Unemployment Compensation Act] does not moot or void the workers' interest in obtaining attorneys fees and costs for the successful disposition of their claim. . . . *Due to the existence of the "live" issue of attorney's fees and costs, we hold that the suit was not moot.*

*Id*. at 151 (emphasis added).

Although the City focuses on the propriety of remand on the issue of its own claim for attorneys' fees, it also apparently agrees that if jurisdiction is lacking over Carowest's declaratory judgment claims, "the only remaining question [would be] whether *any party* should be awarded attorneys' fees and costs." City Br. at 28-29 (emphasis added). Therefore, even if this Court concludes that the district court lacks jurisdiction over Carowest's South Tributary Claims, it should remand the case so that the district court can resolve both parties' claims for attorneys' fees.

41

**II.** **The trial court properly denied Yantis's plea to the jurisdiction as to Carowest's South Tributary Claims.**

If this Court declines to dismiss Yantis's appeal for lack of jurisdiction for the reasons set forth in Carowest's Motion to Dismiss, filed on January 4, 2018, the Court should affirm the trial court's denial of Yantis's plea to the jurisdiction.

To the extent this Court concludes that the district court's jurisdiction over Carowest's South Tributary Claims against Yantis depends on its jurisdiction over Carowest's claims against the City, the district court's order denying Yantis's plea to the jurisdiction should be affirmed for the same reasons, set forth in Section I, that the order denying the City's plea should be affirmed.

**A.** **Jurisdiction over Carowest's South Tributary Claims against Yantis is not dependent on jurisdiction over Carowest's same claims against the City.**

Relying on this Court's opinion in *Carowest II*, Yantis argues that, if this Court concludes that the City is immune from Carowest's declaratory judgment claims, the district court also lacks jurisdiction over Carowest's claims against Yantis because "the City is an indispensable party to Carowest's claims regarding '*the validity and legality of the North Tributary Contract*.'" Yantis Br. at 4-5 (quoting *Carowest II*) (emphasis added). Yantis's invocation of the North Tributary Contract, and its related argument that permitting Carowest to seek a

42

declaration that the contract is illegal would create an end-run around the City's governmental immunity, is both factually and legally wrong.

First, none of the South Tributary Claims asserted by Carowest in this action allege that "the North Tributary Contract is void because it was awarded as part of a secret deal where Yantis released its delay claims against the City," as Yantis asserts. *See* Yantis Br. at 4. The North Tributary Claims were at issue in *Carowest II*. Carowest's separate and distinct South Tributary Claims in this case seek the following declarations concerning Yantis: (1) "Yantis has no right to damages under the Delay Claim"; (2) "the October 21, 2009 Change Order released any delay claim that existed before that date"; and (3) "the May 31, 2010 progress payment fully and finally released any delay claim that existed before that date." CR 32. These declarations are wholly unrelated to the North Tributary Claims.

Second, this Court's conclusion in *Carowest II* that the City was an indispensable party to Carowest's North Tributary Claims against Yantis because the declarations concerned the "validity and legality" of a contract to which the City was a party has no application here. In this case, Carowest only seeks declarations that Yantis has no right to damages under the Delay Claim because it had released the claim—not that the North Tributary Contract (or any other contract) between the City and Yantis is void. These declarations would not have

the effect of "voiding a municipal contract" and thereby "destroy[ing] the effect of the [City's] immunity," as Yantis asserts. *See* Yantis Br. at 5. Instead, the declarations Carowest seeks against Yantis would result in a final and complete adjudication of the dispute without prejudicing the rights of or imposing any liability on the City. *See, e.g.*, *Wood v. Walker*, 279 S.W.3d 705, 713 (Tex. App.—Amarillo 2007, no pet.) (holding that dismissal of County in declaratory judgment action did not preclude the trial court from rendering complete relief between the remaining parties); *see also Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162 (Tex. 2004) (explaining that subject matter jurisdiction is rarely implicated by the failure to join a party in a declaratory judgment action). Because the City is not an indispensable party to Carowest's South Tributary Claims against Yantis, jurisdiction over these claims against Yantis exists independently of jurisdiction over Carowest's claims against the City.

## B. Carowest's South Tributary Claims implicate a justiciable controversy.

Yantis further maintains that Carowest's claim seeking a declaration that Yantis "has no right to damages under the delay claim" fails to present a justiciable controversy because the City's indemnity claim against Carowest never matured. *See* Yantis Br. 5-9. This contention should be summarily rejected.[17]

---

[17] Yantis did not raise a justiciability argument in its plea to the jurisdiction. *See* CR 131-98. When it raised the argument for the first time in its reply, Yantis properly noted that Judge Davis had previously ruled against Yantis, on cross motions for summary judgment, regarding

44

Whether Yantis's demand letters triggered Carowest's indemnity obligations under the Letter Agreement, such that Carowest had a duty to negotiate or adjudicate Yantis's Delay Claim, lies at the heart of an ongoing controversy between Carowest and the City. In fact, Yantis admits that its position on this point diverges from that of the City, which maintains that Carowest's obligation to indemnify and hold the City harmless arose when Yantis asserted its Delay Claim, and did not turn on a third-party first determining the claim's validity. *See* Yantis Br. at 8. Thus, the declarations Carowest seeks relating to its indemnity obligations do not concern a merely hypothetical controversy.

Furthermore, "[d]eclaratory-judgment actions are intended to determine the rights of parties when a controversy has arisen, before any wrong has actually been committed, and are preventative in nature." *Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 88 (Tex. App.—Austin 2004, pet. denied). All that is required for a court to proceed on a declaratory judgment action is a threat of imminent litigation or likely injury. *See, e.g., Texas Dept. of Banking v. Mount Olivet Cemetery Ass'n*, 27 S.W.3d 276, 282-83 (Tex. App.—

---

the justiciability of the indemnification claims. *See* CR 1031. However, Yantis does not acknowledge the prior summary judgment ruling anywhere in its brief to this Court. Because the justiciability issue was previously decided in Carowest's favor, it is not a proper subject for review here. Therefore, if this Court concludes that Yantis is entitled to bring an interlocutory appeal of its jurisdictional plea, this Court should dismiss Yantis's justiciability argument. *See Estate of Jones*, 388 S.W.3d at 665-67 (holding that appellate court lacked jurisdiction to consider interlocutory appeal of City's plea to the jurisdiction because the trial court had implicitly denied City's the plea by granting partial summary judgment on the issue of liability and City did not timely appeal that interlocutory order).

Austin 2000, pet. denied) (explaining that "ripeness does not require an actual injury," but only the "ripening seeds of a controversy"); *Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153-54 (Tex. App.—Austin 1998, no pet.) (same); *Unauthorized Practice of Law Comm. v. Nationwide Mut. Ins. Co.*, 155 S.W.3d 590, 595 (Tex. App.—San Antonio 2004, pet. denied) (same). As this Court has explained:

> A justiciable controversy need not be a fully ripened cause of action. However, the fact situation must manifest the ripening seeds of a controversy . . . even though the differences between the parties as to their legal rights have not reached the state of an actual controversy. In other words, there must either be a pending cause of action between the parties or such a clear indication of the extent of the parties' differences that a court may presume one is imminent.

*Taylor v. State Farm Lloyds, Inc.*, 124 S.W.3d 665, 669 (Tex. App.—Austin 2003, pet. denied) (internal citations and quotations omitted).

In this case, the City made repeated demands that Carowest negotiate or adjudicate Yantis's Delay Claim *prior to* its submission to a third-party mediator to resolve any dispute regarding its validity. Carowest consistently denied that it had any obligation to defend or indemnify the City against a bogus Delay Claim that Yantis had already released. This disagreement between the City and Carowest manifested an actual controversy between the parties or, at the very least, the "ripening seeds of a controversy." *Taylor*, 124 S.W.3d at 669. When

46

Carowest filed the South Tributary Claims against the City and Yantis, it did so in response to a threat of imminent litigation. The threat of litigation, in fact, subsequently developed into an actual claim by the City that Carowest breached the Letter Agreement, including Carowest's obligation to indemnify and hold the City harmless from certain claims. Yantis's argument that "Carowest's UDJA action relating to indemnity never matured into a justiciable controversy," Yantis Br. at 9, should therefore be rejected.

## CONCLUSION AND PRAYER

For the foregoing reasons, the district court's denial of the City's plea to the jurisdiction should be affirmed. If this Court does not dismiss Yantis's appeal for want of jurisdiction, the denial of Yantis's plea to the jurisdiction should also be affirmed. Carowest respectfully prays that this court affirm the district court's orders and remand the case to the district court for further proceedings.

Respectfully submitted,

**BAKER BOTTS L.L.P.**

By: */s/ Thomas R. Phillips*
Thomas R. Phillips
State Bar No. 00000022
Maddy R. Dwertman
State Bar No. 24092371
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
(512) 322-2500
(512) 322-2501 (Facsimile)
tom.phillips@bakerbotts.com
maddy.dwertman@bakerbotts.com

**DAVIS & SANTOS, P.C.**

Jason Davis
State Bar No. 00793592
Caroline Newman Small
State Bar No. 24056037
719 Flores St.
San Antonio, Texas 78204
(210) 853-5882
(210) 200-8395 (Facsimile)
jdavis@dslawpc.com
csmall@dslawpc.com

**ATTORNEYS FOR APPELLEE**

48

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 11,903 words, excluding the parts of the brief exempted by Rule 9.4(i)(1).

*/s/ Maddy R. Dwertman*
Maddy R. Dwertman

# CERTIFICATE OF SERVICE

I certify that on January 4, 2018, a true and correct copy of the foregoing was served via the Court's Electronic Filing System on the following counsel of record:

G. Alan Waldrop
Ryan D. V. Greene
TERRILL & WALDROP
810 West 10th Street
Austin, Texas 78701
awaldrop@terrillwaldrop.com
rgreene@terrillwaldrop.com

Valeria M. Acevedo
J. Frank Onion, III
CITY OF NEW BRAUNFELS, TEXAS
CITY ATTORNEY'S OFFICE
424 S. Castell Ave.
New Braunfels, Texas 78130
vacavedo@nbtexas.org
fonion@nbtexas.org

*Attorneys for Appellant*
*City of New Braunfels, Texas*

Lawrence Morales, II
Chuck Shipman
THE MORALES FIRM, P.C.
6243 W. IH 10, Suite 132
San Antonio, Texas 78201
lawrence@themoralesfirm.com
cshipman@themoralesfirm.com

Lamont A. Jefferson
Emma Cano
JEFFERSON CANO
112 East Pecan St., Suite 1650
San Antonio, Texas 78205
ljefferson@jeffersoncano.com
ecano@jeffersoncano.com

*Attorneys for Appellant*
*YC Partners, Ltd., d/b/a Yantis Company*

 /s/ Thomas R. Phillips
Thomas R. Phillips

# INDEX TO APPENDIX

Exhibit 1        Plaintiff Carowest Land, Ltd.'s Second Amended Petition

# EXHIBIT 1

| | | |
|---|---|---|
| CAROWEST LAND, LTD., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| YC PARTNERS, LTD. | § | COMAL COUNTY, TEXAS |
| d/b/a YANTIS COMPANY, THE CITY | § | |
| OF NEW BRAUNFELS, AND | § | |
| MICHAEL E. MORRISON, | § | |
| | § | |
| Defendants. | § | 433rd JUDICIAL DISTRICT |

## PLAINTIFF CAROWEST LAND, LTD.'S SECOND AMENDED PETITION

TO THE HONORABLE COURT:

Plaintiff Carowest Land, Ltd. ("Carowest") files this Second Amended Petition against Defendants YC Partners, Ltd. d/b/a Yantis Company ("Yantis"), the City of New Braunfels (the "City" or "New Braunfels"), and Michael E. Morrison, Individually ("Morrison"), and in support would respectfully show:

## I. INTRODUCTION

Integrity is stated as a core value of the City of New Braunfels. The City should keep its word to its citizens. The City promises to adhere to "the highest standards of performance, transparency, accountability and ethical conduct." This case arises from a breach of that promise through an abuse of power by Michael Morrison, the City Manager.

## II. DISCOVERY LEVEL

1. Plaintiff intends that discovery be conducted under Level 2 in accordance with Rule 190.3 of the TEXAS RULES OF CIVIL PROCEDURE.

## III. PARTIES

2. Plaintiff Carowest is a Texas limited partnership.

210

3. Defendant YC Partners, Ltd. d/b/a Yantis Company is a Texas Limited Partnership with its principal place of business in Bexar County, Texas and has appeared in this suit.

4. Defendant City is a home-rule municipality and has appeared in this suit.

5. Defendant, Michael E. Morrison, an individual, may be served with process at defendant's usual place of business at 424 S. Castell Avenue, New Braunfels, Texas 78130.

## IV. VENUE

6. Venue is proper in Comal County because:

a. The City is located in this county.

b. At least one of the contracts at issue provides for venue in this county.

c. Pursuant to TEX. CIV. PRAC. & REM. CODE §§15.002(a)(1), all or a substantial part of the events giving rise to these claims occurred in Comal County.

## V. JURISDICTION

7. The Court has jurisdiction in this matter pursuant to Article V, Section 8, of the Texas Constitution. The amount of damages exceeds the jurisdictional minimum of this Court.

8. Additionally, the Court has jurisdiction over the claims asserted against the City because:

a. The claims arise, in part, from the City's agreements involving goods and services, and therefore, jurisdiction is proper under TEX. LOC. GOV'T CODE § 271.152 as the City has waived sovereign immunity for purposes of adjudicating claims related to these agreements;

b. The City negotiated and entered into an agreement that resolved a condemnation dispute and, therefore, the City waived immunity under *Texas A&M University-Kingsville v. Lawson*, 87 S.W.3d 518 (Tex. 2002) and *City of Carrollton v. Singer*, 232 S.W.3d 790 (Tex. App. – Fort Worth 2007, pet. denied) and jurisdiction is proper under Article I, Section 17 of the Texas Constitution;

c. Immunity does not bar a claim brought under Article I, Section 17 of the Texas Constitution, which prohibits the taking, damaging, or

2

destruction of a person's private property for public use without adequate compensation. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007);

d. The City's actions, as described below, constitute "waiver by conduct" as set forth in *Texas Southern University v. State Street Bank and Trust Company*, 212 S.W.3d 893, 904-908 (Tex. App.— Houston [1st Dist] 2007, pet. denied);

e. The City's tortuous conduct was committed while it was engaged in proprietary, rather than governmental, functions; and

f. The City has waived immunity from suit by expressly consenting to suit and liability.

9. Pursuant to New Braunfels Municipal Code, Art. IV § 2-128, prior to the filing of this Petition, Plaintiff sought redress with the City Council and the City has been made aware that the damages alleged in this suit were likely to result in a claim against the City.

## VI. FACTS

### A. The City's South Tributary Regional Flood Control Project

10. The South Tributary Regional Flood Control Project (the "Project") is a multi-million dollar City drainage project designed to channel run-off waters down a large drainage channel (the "Channel") to the Guadalupe River. To reach the river, the Project's run-off waters must cross a large section of Property (the "Property") owned by Carowest Land, Ltd., a limited partnership affiliated with the Weston family.

11. Presently, four generations of Weston family members call the New Braunfels area home. Their philanthropic endeavors have contributed to the betterment of life in New Braunfels. Working hand-in-hand with City and civic leaders, the Weston family, directly and through Weston family businesses and foundations, have renovated local theaters, endowed local universities, generously supported local churches, sponsored farming and agriculture programs, Boy Scouts Troops, Habitat for Humanity, the New Braunfels Children's Museum, Hope

3

212

Hospice, Mid-Texas Symphony, Landa Park, and regularly contributed to the New Braunfels Chamber of Commerce.

12. By the summer of 2008, Carowest, aware of the detrimental impact that the Channel would have on the value of the Carowest Property, requested the City to relocate the Channel to the outer boundary of the Property (the "Carowest Alignment"). The City refused to accept the Carowest Alignment. Instead, the City insisted on an alignment which would completely sever about 40 acres from the rest of the property (the "City Alignment"). The City's Alignment thus aggravated, rather than mitigated, the harmful impact of the Channel. In January of 2009, the City contracted with the Yantis Company ("Yantis") to construct the entire drainage channel using the City Alignment. The map below shows the proposed Carowest/Weston Alignment versus the City Alignment for that portion of the drainage channel which crosses Carowest Property.



4

## B. Weston Fields: A New Sports Complex

13.     During the same time that Carowest and the City were having discussions about the South Tributary Project, the City was exploring options to expand municipal sports facilities. The Weston family, through the Weston Ranch Foundation, offered to lease to the City about 100 acres of land not on the Carowest Property but elsewhere within the City limits. Leasing the 100 acre plot, called Weston Fields, would cost the City only $1 per year, and the City would be able to establish new athletic fields and related amenities.

14.     By late 2008, the City and the Weston Ranch Foundation were finalizing the lease details. Around that time, a Weston family representative met with the New Braunfels City Manager, Mike Morrison, at City Hall about the Weston Fields project. At that meeting, Morrison presented an architect's plans for extra sports fields to be located on Carowest Property - in addition to the proposed sports fields contemplated for the 100 acre Weston Fields lease. Morrison requested that Carowest donate its land for the additional fields. Morrison developed such plans without consulting Carowest: the plans showed the additional sports fields located in those same 40 acres of Carowest Property severed by the City Alignment of the drainage channel. Carowest declined Morrison's request.

## C. Carowest and the City Meet on March 27, 2009

15.     On March 2, 2009, Carowest renewed its request that the City accept the Carowest Alignment but the request was again rejected. On the morning of March 27th, Carowest representatives met with Morrison and other City officials. Carowest then asked that all of its land be removed from the Project and offered to pay any expenses caused by Carowest's removal. During the same meeting, Carowest delivered a handwritten letter from the Weston Ranch Foundation requesting that the City consider the channel alignment concerns raised repeatedly by Weston family members living on the Carowest property.

5

16. After the March 27th meeting, as more fully explained below, Morrison undertook a malicious campaign to harm Carowest in at least three ways:

(a) He deliberately initiated improper condemnation proceedings against the severed 40 acres on the outer boundaries of the Carowest property;

(b) He attempted, through the use of misrepresentations to the City Council and others, to deprive Carowest of valuable fill that would be excavated from the drainage channel; and

(c) He vindictively attempted to coerce Carowest to pay hundreds of thousands of dollars to Yantis for a bogus delay claim, a claim that Morrison and the City Attorney knew Yantis had already released.

Morrison's actions were dishonest, taken in bad faith and accomplished with and through a series of deceptive acts.

## D. Morrison Misuses The City's Condemnation Power

17. On April 14, 2009, through the City's Real Estate Manager, Morrison sent Carowest a letter expressing the intent to take by condemnation the 40 acres of Carowest property severed by the City's Alignment of the drainage channel. Morrison undertook these actions in bad faith as there was no pressing public need for those 40 acres. In fact, immediately adjacent acreage was listed for sale, yet Morrison made no serious efforts to acquire that property.

## E. Morrison Attempts To Deprive Carowest of Its Valuable Fill

18. The City and Carowest had previously agreed that Carowest would have the option to keep the fill from the drainage channel. Specifically, the City agreed to the following: "At Carowest's option, and at the city's cost, the fill material from the Channel Tract will be

6

taken from the site by the City's contractor and transported by the City's contractor to any location requested by Carowest upon the Carowest Property or any location up to one-half mile outside the boundary of the Carowest Property."

19.     Contrary to the City's obligations and despite urgent pleas from Carowest not to proceed, on May 7, 2009, Morrison ordered Yantis to begin digging on Carowest property and to remove the fill to a remote location that was undisclosed to Carowest.   When Carowest attempted to contact Yantis concerning the fill, Yantis informed Carowest that the City had directed Yantis not to speak with Carowest and to "offer zero information."

20.     Then, in the Agenda for the May 11, 2009 City Council Meeting, Morrison represented to the City Council that Carowest had "notified the city that they no longer wish to have the fill placed on their property."  This representation was false and made in bad faith, as Morrison had personally acknowledged to Carowest in an April 3, 2009 letter:   "you have previously exercised your option via electronic mail that you want the fill material from the Channel Tract."

21.     Carowest appeared at the May 11, 2009 City Council Meeting (the "May 2009 Council Meeting") and attempted, in the interest of transparency, to provide the City Council with relevant information in open session.   In response, prompted by Morrison, the Mayor literally "pulled the plug" on the microphone of Carowest's representative when he attempted to publicly discuss these issues and to correct Morrison's false representations.  The City Council then improperly convened in closed executive session to deliberate the Carowest fill issue and the subject was not further discussed in the public forum.

22.     Carowest sent additional letters on May 12 and May 14, requesting that digging cease and that fill no longer be removed from the Property.  Ignoring those requests and acting in

7

accordance with decisions made during its "closed door" deliberations, the City continued and even accelerated excavation from May 11 to May 14.

23. By May 15, 2009, the City finally agreed temporarily to stop removing fill. However, much damage had already been done. Ultimately, the City and Yantis wrongfully removed in excess of 15,000 cubic yards of Carowest fill worth over a hundred thousand dollars. The excavation produced a lasting scar on the property, creating a trench deeper than a fully loaded 18 wheel tractor trailer rig and wide enough for two such rigs to pass side-by-side. The volume of fill removed was enough to cover over 100 football fields with dirt an inch thick.



**F. Morrison Attempts To Coerce Carowest Into Paying Yantis A Bogus Delay Claim**

24.    The City and Carowest subsequently entered discussions leading to new contractual obligations memorialized in a July 27, 2009 Letter Agreement ("Letter Agreement"), which Morrison signed and the City Council approved.  The Letter Agreement provided the following essential terms, among others:

a.   The City allowed Carowest to modify the location and design of the Channel on the Property (the "Modification").

b.   Carowest agreed to pay for additional engineering and construction costs "directly related to analyzing and implementing the Modification." (the "Modification Costs").  Modification Costs did not include "any costs the City would have incurred without the Modification" or, in other words, all amounts the City would have incurred had the Channel been constructed along the City Alignment.

c.   Carowest further agreed to indemnify the City for claims brought against the City by Yantis, under Yantis' construction contract with the City, which were: (a) for a Modification Cost; and (b) directly attributable to the Modification.

25.    In September 2009, the City and Carowest executed a Development Agreement which gave Carowest control over all future channel construction on the Property ("Development Agreement').

26.    On October 21, 2009, unknown to Carowest, the City and Yantis executed Change Order No. 3 (the "Change Order"), which removed all work on the Carowest Property from Yantis' contract with the City, and awarded Yantis additional work of equal or greater value elsewhere on the Project.  In the Change Order, Yantis agreed that **"there shall be no further**

9

**time or dollar compensation as a result of this Change Order"** and thereby released all Yantis claims against the City concerning the Carowest portion of the Project. Neither the City nor Yantis disclosed to Carowest the existence of Change Order No. 3.

27.     At the City's urging, Carowest attempted to negotiate a contract with Yantis to perform the modified construction on the Property.  Yantis, however, submitted unreasonably expensive bid proposals.  Therefore, on May 10, 2010, again at the City's urging, Carowest contracted with a different company to construct the modified Channel at a price that saved the City substantial sums of money.  Carowest has complied with its obligations under the Letter Agreement and the Development Agreement, and its portion of the channel construction is complete.

28.     On March 10, 2010, in complete disregard of the clandestine Change Order No. 3 it had signed almost five months earlier, Yantis presented a $556,248.00 claim to the City for alleged work delays on Carowest property.  Over two months later, Morrison and the City referred this delay claim to Carowest "to negotiate with Yantis and work out a payment." Carowest denied any delays due to the Modification.  The City and Yantis continued to conceal the Change Order.  On May 31, 2010, Yantis executed another release of all delay claims while applying to the City for a progress payment on the Project (The "Waiver").

29.     On July 18, 2010, almost nine months after executing Change Order No. 3 and two months after submitting the $556,248.00 delay claim, Yantis re-submitted its delay claim, this time in the amount of $276,270.80, again purportedly related to the Project on Carowest property (the "Delay Claim").  Morrison and the City again submitted the Yantis claim to Carowest and again demanded indemnification (the "Indemnification Claim").  Carowest again denied any delays due to the Modification.

10

30. Morrison acted in bad faith in demanding that Carowest indemnify the City for the Delay Claim because he knew that the Delay Claim was without merit. As a result of Morrison's and the City's demanding Carowest to pay the invalid Delay Claim while concealing the fact that Yantis had waived the claim, Carowest incurred substantial losses of time and resources.

## G. The City and Yantis Enter Into Another Covert Agreement Related to the Delay Claim

31. In addition to the South Tributary Project, the City planned another similar drainage project called the North Tributary Project. The North Tributary Project is also designed to channel run-off waters to the Guadalupe River in an area parallel to the South Tributary Channel.

32. The July 27, 2009 Letter Agreement required the City to include in the North Tributary Project's bid documents a contractor bid option that allowed Carowest to receive any and all fill generated from the North Tributary Project.

33. Yantis was among several construction companies participating in the public bidding process which occurred in March of 2011. Yantis was not the low bidder for the base bid for the North Tributary Project. The City elected, however, to tabulate the bids using all bid alternates, which resulted in Yantis being the apparent frontrunner.

34. The City Council met on May 9, 2011 to decide whether and to whom to award the North Tributary construction contract worth approximately $5 million dollars. Unknown to the public, to other construction companies bidding on the contract, and to Carowest, the City and Yantis had earlier that same day entered into an agreement to ensure that Yantis would be awarded that contract.

11

35. Specifically, at approximately 3:00 p.m., the City and Yantis entered into a written arrangement whereby Yantis agreed to fully release the City from the Delay Claim related to the South Tributary Project **if and only if** Yantis "is awarded the North Tributary Contract . . . at the New Braunfels City Council meeting scheduled for this evening." (the "North Tributary Deal").

36. In essence, Yantis offered the City its release of the Delay Claim valued at over $500,000 in direct exchange for the Council's immediate vote awarding Yantis the new $5 million dollar North Tributary Contract. The quid-pro-quo nature of the arrangement is unmistakable as the North Tributary Deal expressly provided "**If the contract is not awarded to Yantis tonight, this offer is hereby withdrawn.**" (emphasis added).

37. Not surprisingly, Morrison and the City failed to disclose this covert quid-pro-quo arrangement during the public discussion of the North Tributary Project that night. Instead, following its closed door executive session, the City Council awarded Yantis the new contract.

**H. The City Further Breaches its Obligations Under the Letter Agreement**

38. Carowest and the City had also agreed in the July 27, 2009 Letter Agreement that the City would purchase property from Carowest for use in a future expansion of an NBU sewage treatment facility. On November 2, 2009, the City and Carowest entered into a Deed Without Warranty (the "Deed") in which Carowest agreed to sell over five (5) acres of the Property for $135,000.00 (the "Purchase Price").

39. Instead of paying the Purchase Price, the City attempted to re-negotiate the transaction and change material language in the Deed – **after** the City had explicitly agreed to the Deed, as evidenced by Morrison's signature.

12

221

40. Carowest declined to change the terms of the agreement and again requested that the City keep its word and comply with its obligations to pay for the property. The City refused.

41. In addition to the City's breach concerning the NBU tract, Carowest has also notified the City on several occasions of the City's violations of its obligations to pay for certain construction and engineering costs under the Letter Agreement. For example, Carowest notified the City that the City was "in breach of its obligations under the July 27, 2009 Letter Agreement" for the City's failure to pay for construction expenses related to electrical services. This is the type of expense that the City was responsible for under the Letter Agreement but, consistent with its pattern of bad faith conduct, the City continued to break its word to Carowest and failed to pay for these and other expenses.

## VII. CAUSES OF ACTION

### COUNT ONE
### Civil Rights Violation
### (Against City, Morrison)

42. The allegations contained in the Paragraphs above, are hereby re-alleged and incorporated by reference.

43. At all times relevant to this cause of action, the City and Morrison acted under color of state law in depriving Carowest of its fill by removing it from the Property, and in subjecting Carowest to fraudulent, coercive, and bad faith treatment in connection with the Project.

44. The City and Morrison acted pursuant to custom or policy.

45. The City and Morrison acted arbitrarily, capriciously and unreasonably in violation of the equal protection and substantive due process clauses of the Fourteenth Amendment of the United States Constitution.

13

46.    Under 42 U.S.C. § 1983:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

47.    The City is liable to Carowest because a municipality has no immunity from liability under 42 U.S.C. § 1983, flowing from its constitutional violations.

## COUNT TWO
### Declaratory Judgment
### (Against City, Morrison)

48.    The Allegations contained in the Paragraphs above are hereby re-alleged and incorporated by reference.

49.    The Texas Open Meetings Act ("TOMA") requires that "[e]very regular, special, or called meeting of a governmental body shall be open to the public." TEX. GOV'T CODE § 551.102.

50.    TOMA protects three compelling interests: (1) open meetings provide transparency in a government's decision making process; (2) open meetings discourage fraud and corruption in government; and (3) open meetings foster trust in government. *See Doe v. Reed*, 130 S. Ct. 2811, 2819 (2010). Conversely, closed meetings: (1) prevent transparency; (2) encourage fraud and corruption; and (3) foster mistrust in government. *Id.*

51.    On the issue of transparency, U.S. Supreme Court Justice Louis D. Brandeis once wrote: "[p]ublicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." L. Brandeis, Other People's Money 62 (National Home Library Foundation ed. 1933).

14

52. Under Texas Civil Practice & Remedies Code § 37.004(a), Carowest can seek a declaration of its rights and status with respect to whether the City and Morrison violated TOMA, among other ways, by their conduct at the May 11, 2009 and May 9, 2011 Council Meetings.

53. Carowest seeks a declaration that the City and Morrison violated TOMA, among other ways, by (1) refusing Carowest's request to discuss public issues and convening in closed session at the May 2009 Council Meeting, and (2) concealing the North Tributary Deal's quid pro quo arrangement between the City and Yantis from Carowest, the public and from other bidders on the North Tributary Project at the May 2011 Council Meeting.

54. At all times relevant to this cause of action, Morrison's actions were unlawful and/or unauthorized and were outside of the scope of his authority as City Manager of the City of New Braunfels.

55. At all times relevant to this cause of action, Morrison acted in bad faith with a malicious and/or willful intent to cause a deprivation of Carowest's rights.

56. The Court has subject matter jurisdiction over the declaratory relief because the parties' underlying controversy falls within the constitutional and statutory jurisdiction of this Court.

57. Carowest is further entitled to its reasonable attorneys' fees under the Texas Uniform Declaratory Judgments Act.

## COUNT THREE
### Declaratory Judgment
### (Against Morrison, City, Yantis)

58. The Allegations contained in the Paragraphs above are hereby re-alleged and incorporated by reference.

15

59. The North Tributary Deal sets forth certain rights and obligations between the City, Yantis, and Carowest.

60. Under Texas Civil Practice & Remedies Code § 37.004(a), Carowest can seek a declaration of the rights and status between it, the City and Yantis under the North Tributary Deal and the North Tributary Project construction documents.

61. Carowest seeks a declaration concerning the validity and legality of the North Tributary Deal in that Yantis gave something of value to the City (a release of a claim that Yantis valued at over $500,000) as a quid-pro-quo for an immediate vote by the City Council on May 9, 2011 awarding Yantis the $5 Million dollar construction contract for the North Tributary Project.

62. If the North Tributary Deal between the City and Yantis that resulted in the awarding of the North Tributary contract was illegal or in violation of the Texas Purchasing Act and Chapter 252 of the Texas Local Government Code, such agreement is void and Carowest cannot and will not accept the benefits of such Deal in the form of fill generated from the North Tributary Project.

63. The Court has subject matter jurisdiction over the declaratory relief because the parties' underlying controversy falls within the constitutional and statutory jurisdiction of this Court, and further has jurisdiction under Tex. Loc. Gov't Code §252.061.

64. Carowest is further entitled to its reasonable attorneys' fees under the Texas Uniform Declaratory Judgments Act.

## COUNT FOUR
### Declaratory Judgment
### (Against Yantis)

65. The Allegations contained in the Paragraphs above are hereby re-alleged and incorporated by reference.

16

66. Carowest agreed to indemnify the City for certain costs related to the Project.

67. Yantis submitted the Delay Claim to the City.

68. The City then made a claim for indemnification against Carowest and a demand for Carowest to defend the City against the Delay Claim.

69. Under Texas Civil Practice & Remedies Code § 37.004(a), Carowest can seek a declaration of the rights and status between the City and Yantis under the agreements between the City and Yantis, including but not limited to the Change Order, Waiver, and other contract documents between Yantis and the City.

70. Carowest seeks a declaration that Yantis has no right to damages under the Delay Claim.

71. Carowest seeks a declaration that the October 21, 2009 Change Order released any delay claim that existed before that date.

72. Carowest seeks a declaration that the May 31, 2010 progress payment fully and finally released any delay claim that existed before that date.

73. The Court has subject matter jurisdiction over the declaratory relief because the parties' underlying controversy falls within the constitutional and statutory jurisdiction of this Court.

74. Carowest is further entitled to its reasonable attorneys' fees under the Texas Uniform Declaratory Judgments Act.

### COUNT FIVE
### Declaratory Judgment
### (Against City)

75. The Allegations contained in the Paragraphs above are hereby re-alleged and incorporated by reference.

17

76. The July 27, 2009 Letter Agreement sets forth certain rights and obligations between the City and Carowest.

77. Under Texas Civil Practice & Remedies Code § 37.004(a), Carowest can seek a declaration of the rights and status between it and the City under the July 27, 2009 Letter Agreement, and any other documents or agreements between them.

78. Carowest seeks a declaration under the July 27, 2009 Letter Agreement that, because Yantis has no valid Delay Claim, the City has no right to indemnification from Carowest.

79. Carowest seeks a declaration that the October 21, 2009 Change Order fully and finally released any delay claim that existed before that date.

80. Carowest seeks a declaration that the May 31, 2010 progress payment fully and finally released any delay claim that existed before that date.

81. The Court has subject matter jurisdiction over the declaratory relief because the parties' underlying controversy falls within the constitutional and statutory jurisdiction of this Court.

82. Carowest is further entitled to its reasonable attorneys' fees under the Texas Uniform Declaratory Judgments Act.

**COUNT SIX**
**Breach of Contract**
**(Against City)**

83. The Allegations contained in the Paragraphs above are hereby re-alleged and incorporated by reference.

84. All conditions precedent have been performed or have occurred as required under the Letter Agreement.

18

85. Carowest and the City executed a valid and enforceable written contract through the Deed, in which Carowest agreed to convey certain Carowest Property in exchange for adequate compensation to resolve an eminent domain claim.

86. Carowest and the City executed a valid and enforceable written contract through the Letter Agreement, which was incorporated by reference into the Deed and which provided for "City Acquisition of Carowest Property for NBU Expansion."

87. Carowest and the City executed a valid and enforceable written contract through the Development Agreement.

88. Carowest and the City executed valid and enforceable contracts through the Drainage Channel and Recreational Easements.

89. By failing to pay the purchase price for the Deed, the City has breached the Letter Agreement.

90. By failing to pay Carowest other amounts for construction and engineering expenses as obligated, the City has further breached the Letter Agreement and the Development Agreement.

91. By failing to comply with obligations under the Letter Agreement and Development Agreement, the City has breached the Easements.

92. The City's breach of its contractual obligations has caused Carowest to sustain general actual damages as well as special damages. Carowest seek these damages, maximum allowable interest on those amounts, plus reasonable and necessary attorney's fees pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code and Texas Local Government Code §271.153.

## COUNT SEVEN
### Breach of Fiduciary Duty
### (Against City and Morrison)

93. The allegations contained in the Paragraphs above are hereby re-alleged and incorporated by reference.

94. As a party to the July 27, 2009 Letter Agreement and the September 14, 2009 Development Agreement, the City, as a joint venturer with Carowest in the South Tributary Project, owed Carowest the highest fiduciary duties recognized in the law.

95. The City and Morrison further owed Carowest the highest duties recognized in the law as Carowest like all New Braunfels citizens was entitled to expect "honest services" from its public officials. *See* 18 U.S.C. § 1346; *see also City of New Braunfels Mission Statement and Core Values*.

96. Among others, the City and Morrison owed Carowest the duties of care and loyalty, utmost good faith, to refrain from self-dealing, candor, full disclosure, fairness, and honesty in dealings with Carowest on all matters pertaining to the South Tributary Project.

97. The City and Morrison breached those fiduciary duties by the wrongful conduct described throughout this Petition, including but not limited to: (1) intentionally and fraudulently concealing material and critical facts concerning financial matters related to the South Tributary Project; and (2) intentionally conspiring to deprive Carowest of the Carowest Fill to which Carowest was entitled.

98. As a direct and proximate result of these and other breaches, Carowest has suffered injury and the City and Morrison have received a benefit.

99. The City is liable to Carowest for breach of fiduciary duty by nondisclosure because it was performing a proprietary act for which the City has no governmental immunity.

20

100. Accordingly, Carowest is entitled to recover its actual damages from the City, as well as exemplary damages.

## COUNT EIGHT
### Knowing Participation in Breach of Fiduciary Duty
### (Against Morrison)

101. The allegations contained in the Paragraphs above are hereby re-alleged and incorporated by reference.

102. As set forth above, the City owed Carowest the fiduciary duties of care and loyalty, utmost good faith, to refrain from self-dealing candor, full disclosure, fairness, and honesty in dealings with Carowest on all matters pertaining to the South Tributary Project.

103. Also as set forth above, the City breached those duties.

104. Morrison knowingly participated in those breaches by instigating, encouraging, aiding, assisting, abetting and/or contributing to the wrongful conduct.

105. Morrison was directly involved in the misrepresentations and fraudulent concealment described in this Petition.

106. At all relevant times, Morrison knew that the City owed fiduciary duties to Carowest and knew that the wrongful conduct in which they participated constituted breaches of those duties.

107. Accordingly, Morrison is jointly and severally liable for the damages suffered by Carowest.

## COUNT NINE
### Fraud
### (Against City, Morrison)

108. The allegations contained in the Paragraphs above, are hereby re-alleged and incorporated by reference.

109. When knowingly, falsely, and repeatedly representing the material matters as described in this Petition, the City and Morrison knew that the material representations were false and intended that Carowest act on them. Carowest was unaware of the falsity of the representations and relied on those representations to its detriment.

110. The material representations by the City and Morrison caused Carowest injury.

111. At all times relevant to this cause of action, Morrison's actions were unlawful and/or unauthorized and were outside of the scope of his authority as City Manager of the City of New Braunfels.

112. At all times relevant to this cause of action, Morrison acted in bad faith with a malicious and/or willful intent to cause a deprivation of Carowest's rights.

113. The City and Morrison are liable to Carowest for fraud because they waived any and all immunity by their conduct.

114. The City is also liable to Carowest for fraud because it was performing a proprietary act for which the City has no governmental immunity.

115. Accordingly, Carowest is entitled to recover its actual damages from the City and Morrison, as well as exemplary damages.

## COUNT TEN
### Fraud By Nondisclosure
### (Against City, Morrison)

116. The allegations contained in the Paragraphs above, are hereby re-alleged and incorporated by reference.

117. As described in this Petition, the City and Morrison concealed or failed to disclose material facts to Carowest that they had a duty to disclose.

22

118. Included among the material facts fraudulently concealed was that Yantis had executed a Change Order on October 21, 2009, which contained a release of delay claims resulting from the deletion of the Carowest part of the Project from Yantis' contract with the City.

119. The City and Morrison had a duty to disclose the material facts to Carowest.

120. The City knew that Carowest was ignorant of the above and other facts and that it did not have an equal opportunity to discover the Concealed Information.

121. By failing to disclose the Concealed Information, the City and Morrison intended to, and did induce Carowest into incurring substantial costs in time and resources negotiating with Yantis and the City concerning that issue, when the City and Morrison knew since October of 2009 that Yantis had waived such delay claims.

122. Carowest relied on the City's and Morrison's nondisclosure of the Concealed Information and was injured as a result of acting without the knowledge of the Concealed Information.

123. At all times relevant to this cause of action, Morrison's actions were unlawful and/or unauthorized and were outside of the scope of his authority as City Manager of the City of New Braunfels.

124. At all times relevant to this cause of action, Morrison acted in bad faith with a malicious and/or willful intent to cause a deprivation of Carowest's rights.

125. The City is liable to Carowest for fraud by nondisclosure because it waived any and all immunity by its conduct and expressly consented to suit and liability in its contracts with Carowest.

126. The City is also liable to Carowest for fraud by nondisclosure because it was performing a proprietary act for which the City has no governmental immunity.

23

127.    Accordingly, Carowest is entitled to recover its actual damages from the City and Morrison, as well as exemplary damages.

## COUNT ELEVEN
### Tortious Interference with Contract
### (Against City, Morrison)

128.    The allegations contained in the Paragraphs above, are hereby realleged and incorporated by reference.

129.    In, or around December 2008, Carowest entered into an agreement with Yantis for receipt and placement of Fill generated from the South Tributary Project.

130.    The City and Morrison were aware of the Yantis Contract and of Yantis' obligation to move Fill to Carowest's property.  The City and Morrison willfully and intentionally interfered with the Yantis Contract.

131.    After excavating had begun, Carowest contacted Yantis about acquiring the Fill. Yantis informed Carowest that the City had instructed Yantis not to speak with Carowest regarding the Fill.

132.    In fact, at the direction of the City and Morrison, Yantis had been removing the Fill to areas not on the Property despite knowing that Carowest had elected to keep the fill.

133.    The interference by the City and Morrison proximately caused Carowest injury.

134.    Carowest has suffered actual damages and the loss of the valuable fill as a result of the City's and Morrison's interference with the Yantis Contract.

135.    At all times relevant to this cause of action, Morrison's actions were unlawful and/or unauthorized and were outside of the scope of his authority as City Manager of the City of New Braunfels.

24

136. At all times relevant to this cause of action, Morrison acted in bad faith with a malicious and/or willful intent to cause a deprivation of Carowest's rights.

137. The City is liable to Carowest for tortious interference with an existing contract because it was performing a proprietary act for which the City has no governmental immunity.

138. Accordingly, Carowest is entitled to recover its actual damages from the City and Morrison, as well as exemplary damages.

## COUNT TWELVE
### Conversion of Carowest Fill
### (Against City, Morrison, Yantis)

139. The allegations contained in the Paragraphs above, are hereby realleged and incorporated by reference.

140. As described above, vast quantities of earth displaced by the City's digging of the Channel produced the Carowest Fill.

141. Carowest owned the Carowest Fill and was entitled to immediate possession of the Carowest Fill upon its excavation. The Carowest Fill is personal property belonging to Carowest.

142. The City, Yantis, and Morrison wrongfully exercised dominion and control over the valuable fill and deprived Carowest of the fill by removing it from the Property.

143. Such conduct proximately caused Carowest to suffer injury, for which the City, Morrison, and Yantis are liable.

144. At all times relevant to this cause of action, Morrison's actions were unlawful and/or unauthorized and were outside of the scope of his authority as City Manager of the City of New Braunfels.

25

145. At all times relevant to this cause of action, Morrison acted in bad faith with a malicious and/or willful intent to cause a deprivation of Carowest's rights.

146. The City is liable to Carowest for conversion of the Carowest Fill because it was performing a proprietary act for which the City has no governmental immunity.

147. Accordingly, Carowest is entitled to recover its actual damages from the City, Morrison, and Yantis, as well as exemplary damages.

## COUNT THIRTEEN
### Civil Conspiracy for Conversion, Fraud
### (Against City, Morrison, Yantis)

148. The allegations contained in the Paragraphs above, are hereby realleged and incorporated by reference.

149. The City, Morrison, and Yantis agreed to join a conspiracy with each other to convert the Carowest Fill that rightfully belonged to Carowest, and to defraud Carowest as alleged in this Petition.

150. The City, Morrison, and Yantis knew that the object of such conspiracy was improper and unlawful and that such object would be accomplished through unlawful means.

151. The City, Morrison, and Yantis had a meeting of the minds for this course of conduct.

152. The City, Morrison, and Yantis committed multiple acts to further the object or course of action for this conspiracy.

153. Such acts proximately caused injury to Carowest for which it is entitled to recover from the City, Morrison, and Yantis.

26

# COUNT FOURTEEN
## Inverse Condemnation
### (Against City)

154. The Allegations contained in the Paragraphs above are hereby re-alleged and incorporated by reference.

155. The Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation." TEX. CONST. ART. 1 § 17(a).

156. At all times relevant to this cause of action, Carowest had an ownership interest in the Carowest Fill.

157. As set forth above, from April through May of 2009, the City intentionally physically appropriated the Carowest Fill and unreasonably interfered with Carowest's right to the Carowest Fill.

158. The City's actions were the proximate cause of the taking of Carowest's property and Carowest did not consent to such taking.

159. Carowest has not received adequate compensation for the taking of the Carowest Fill.

160. The taking of the Carowest Fill was for public use.

161. The value of the Carowest Fill was substantial.

162. The City is not immune to an inverse condemnation claim brought under Article I, Section 17 of the Texas Constitution, which prohibits the taking, damaging, or destruction of a person's private property for public use without adequate compensation.

27

236

163. The conduct of the City, described above, caused Carowest actual damages, including, but not limited, the lost use of the Carowest Fill elsewhere on the Property, lost benefits from the Carowest Fill and other economic damages, for which the City is liable.

164. Accordingly, Carowest is entitled to recover its actual damages from the City.

## COUNT FIFTEEN
### Unjust Enrichment
### (Against Yantis)

165. The Allegations contained in the Paragraphs above are hereby re-alleged and incorporated by reference.

166. Yantis has been unjustly enriched by and from its wrongful conduct in appropriating the Carowest Fill complained of herein.

167. Carowest has suffered substantial damages as a result of Yantis' conduct, and Yantis has acquired substantial profits at Carowest's expense to which Yantis is not entitled.

168. Accordingly, Carowest is entitled to recover the amount by which Yantis has been unjustly enriched, including Yantis' profits or other compensation.

## VIII. EXEMPLARY DAMAGES

169. The allegations contained in the Paragraphs above, are hereby realleged and incorporated by reference.

170. Carowest seeks recovery of exemplary damages from the City and Morrison for breach of fiduciary duty. The acts, as described above, were intentional, in that the City and Morrison intended to gain an additional unwarranted benefit. Carowest is therefore entitled to an award of exemplary damages in the amounts determined by the jury at trial.

171. Furthermore, Carowest seeks recovery of exemplary damages from the Defendants for fraud and fraud by nondisclosure. The above described material

28

misrepresentations were made either intentionally or recklessly, with the intent that Carowest act on their misrepresentations, and Carowest relied on the misrepresentations to its detriment. Carowest is therefore entitled to an award of exemplary damages in the amounts determined by the jury at trial.

172.    Furthermore, Carowest seeks recovery of exemplary damages from the Defendants for tortious interference with contract and conversion. Defendants engaged in the misconduct described above in a willful, intentional, or malicious manner with the intent to cause substantial injury to Carowest and/or with conscious or reckless indifference to Carowest's valid legal rights. Carowest is therefore entitled to an award of exemplary damages in the amounts determined by the jury at trial.

## IX.  CONTINUING TORT

173.    Defendants' actions and omissions constitute a continuing tort.

174.    As a result, the statutes of limitations for the foregoing tort causes of action have not begun to run, have not run, and/or have been tolled.

## X.  ATTORNEY'S FEES

175.    Carowest has had to incur reasonable and necessary attorney's fees as a result of Defendants' conduct and by having to file this cause of action and seeks recovery of such fees pursuant to the Texas Declaratory Judgment Act, TEX. CIV. PRAC. & REM. CODE CHAP. 37 & 38, TEX. LOC. GOV'T. CODE §271.153(a)(3) and any and all other applicable laws.

## XI.  JURY DEMAND

176.    Carowest has demanded a jury trial and has tendered the appropriate fee.

29

## XII. <u>REQUEST FOR RELIEF</u>

177.    For all of the foregoing reasons, Plaintiff respectfully prays that, after a jury trial, the Court award judgment in favor of Plaintiff and against Defendants for the following relief, collectively or in the alternative:

a.    A judicial declaration that Yantis has no rights to any damages under the Delay Claim;

b.    A judicial declaration that Carowest has no duty to defend or indemnify the City for Yantis' Delay Claim;

c.    A judicial declaration that the City and Morrison violated TOMA by refusing Carowest's request to publicly discuss the issues underlying the instant suit and convening in closed session at the May 11, 2009 Council Meeting and by failing to disclose the North Tributary Deal during the May 9, 2011 Council Meeting;

d.    A judicial declaration concerning the legality of the North Tributary Deal under the Texas Purchasing Act and other statutes;

e.    An award to Carowest for all of its actual damages, general or special, as well as exemplary damages resulting from Morrison's conduct, to be deposited into the registry of the Court for the benefit of the citizens of the City;

f.    An award to Carowest for all of its actual damages, general or special, resulting from the Defendants' conduct, as alleged herein;

g.    An award to Carowest of exemplary and punitive damages resulting from the Defendants' conduct, as alleged herein;

h.    An award to Carowest of its attorneys' fees and costs;

i.    An award to Carowest of pre- and post-judgment interest to the maximum extent allowed by law or equity; and

j.    Such other and further relief at law or in equity to which Carowest may be justly entitled.

Respectfully submitted,

**THE DAVIS GROUP**
**ATTORNEYS & COUNSELORS, P.C.**


By: _____
Jason Davis
State Bar No. 00793592
112 E. Pecan Street, Suite 900
San Antonio, Texas 78205
Tel:   (210) 853-5882
Fax:   (210) 200-8395
Email:  jdavis@davisgrouppc.com


**BARR LAW, P.L.L.C.**


By: _____
Geoff Barr
State Bar No. 24027277
447 South Seguin Avenue
New Braunfels, Texas
Tel:   (830) 609-2277
Fax:  (888)919-7373

*Attorneys for Plaintiff*
*CAROWEST LAND, LTD.*

31

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document will be sent to the following counsel of record:

Mr. Jason C. Spencer
FORD NASSEN BALDWIN, P.C.
111 Congress Avenue, Suite 1010
Austin, Texas 78701
*Attorney for YC Partners, Ltd.*
*D/B/A Yantis Company*

_____ Regular Mail
__✔__ Certified Mail, RRR
_____ Facsimile
__✔__ E-mail

Mr. Donald J. Jemela
SMITHERS & JEMELA
Attorneys at Law
607 N. Walnut Ave.
New Braunfels, TX 78130
*Attorney for City of New Braunfels*

_____ Regular Mail
__✔__ Certified Mail, RRR
_____ Facsimile
__✔__ E-mail

On this ___8ᵗʰ___ day of July, 2011.

_____
Jason Davis

32